[No. 5421.]
[No. 3079 C. A.]

O'DONNELL v. CHAMBERLIN ET AL. AS EXECUTORS, ET AL.

1. **Contracts—Death of Party—Tender and Delivery—Refusal of Executors.**

Where plaintiff entered into a contract with a certain party to purchase certain notes and securities, and was to pay a certain sum therefor on or before sixty days from the date of the contract, at which time such notes and securities were to be assigned to him; and, at plaintiff's option, the purchase price could be deposited within such time to the credit of the party at a certain bank, and such party died before the expiration of the sixty days, but plaintiff tendered the purchase price to said bank within such period, and the bank, as well as the executors who had not yet qualified, refused to receive it or to make the transfer. Held, that such tender was an acceptance of the offer in the contract, and satisfied the condition necessary to entitle appellant to a delivery and assignment of the securities contracted for, and that a mutual contract then arose, binding such executors to deliver and assign, and the plaintiff to pay.—P. 398.

2. **Practice in Civil Actions—Action for Specific Performance.**

When an action at law for damages will not answer the justice of the case, and an action for specific performance will do so, the action for specific performance will lie.—P. 404.

3. **Same—Action for Specific Performance—Contracts Pertaining to Personalty.**

An action will lie for the specific performance of a contract pertaining to personalty where, under the facts of the particular case before the court, there is no adequate remedy at law; and whether such action can be maintained depends upon the facts of each particular case.—P. 407.

**4. Same—Action for Specific Performance—Contracts Pertaining to Personalty.**

Where a party desired to become the purchaser of a property to be sold under a decree of foreclosure of a mortgage securing a very large indebtedness, and the amount necessary to make the bid would be but a comparatively small sum in excess of such indebtedness; and, by becoming the owner of such indebtedness, he would have legitimate advantages in making the bid, or in case he did not obtain the property, such securities would continue to draw interest during any possible delays in consummating the sale, and the period of possible redemption; and, for these reasons, he entered into a contract with the owner of such securities to purchase them. Held, that, in a proper action, he is entitled to a specific performance of such contract, because an action at law will not satisfy the justice of the case by giving to plaintiff the specific securities which, for good reasons, he contracted to purchase, and because the damages otherwise sustained by him on account of the breach of the contract cannot be estimated in an action at law.—P. 407.

*Appeal from the District Court of the City and County of Denver.*

*Hon. S. L. Carpenter, Judge.*

Action by T. J. O'Donnell against The United States Mortgage and Trust Company and the executors of the last will of Winfield Scott Stratton. From a judgment sustaining a general demurrer to the complaint, plaintiff appeals.          *Reversed.*

Mr. STERLING B. TONEY, Mr. JOHN W. GRAHAM, JR., Mr. T. J. O'DONNELL and Mr. JOHN M. WALDRON, for appellant.

Mr. E. E. WHITTED, Mr. O. L. DINES and Mr. P. H. HOLME, for appellees.

Mr. JUSTICE GUNTER delivered the opinion of the court:

This was an action for specific performance against The United States Mortgage and Trust Com-

pany, and the executors of the last will of Winfield
Scott Stratton, deceased. A general demurrer to
the complaint was sustained, and as the appellant
(plaintiff) stood upon her complaint, the action was
dismissed; the question therefore before us is, Does
the complaint state facts sufficient to constitute a
cause of action? The facts so presented, so far as
pertinent to the first ground urged why the judgment
below holding that the complaint does not state a
cause of action, should stand, are: July 26th, 1902,
Stratton made the following contract:

"I, Winfield S. Stratton * * * in consider-
ation of one dollar to me in hand paid by and for
other valuable consideration moving to me from
Michael Finnerty * * * do hereby give and
grant unto said Finnerty, his executors, administra-
tors and assigns, the right and option· to purchase
* * * the rights, benefits and sums of money de-
creed to the plaintiff * * * in that certain cause
* * * The United States Mortgage and Trust
Company, plaintiff, *vs.* Henry C. Brown *et al.,* de-
fendants * * * and the two certain notes made
by the said Henry C. Brown to said plaintiff, one for
$100,000.00, another for $500,000.00, secured by the
mortgage to said plaintiff described in said decree
* * * for the sum of six hundred and fifty thou-
sand dollars ($650,000.00), to be paid on or before
sixty days from this date, and on payment of said
sum promptly within the time aforesaid, time being
of the essence thereof, I hereby agree for myself, my
executors and administrators, to deliver said two
notes with the same amount due thereon as found by
said decree * * * and assign or procure to be
assigned the said decree *.* * * as the said Fin-
nerty, his executors, administrators or assigns may
direct, * * * and payment of said sum of six
hundred and fifty thousand dollars may, at the option

of said Finnerty, his executors, administrators or assigns, be made by depositing said sum to my credit in the Denver National Bank of Denver, Colorado.''

Within the sixty days named in the contract Stratton died, leaving a will whereby he named as his executors appellees, Dines, Chamberlin and Rice. These executors, on account of litigation over the will, did not qualify until after the lapse of the sixty days mentioned in the contract, but did so qualify before the bringing of this action. September 24th, 1902, after the death of Stratton, appellant theretofore the assignee of Finnerty, as a compliance with the contract, tendered at and to said bank ''for the use and credit of said Stratton, or his estate, or the executors thereof or other persons entitled thereto'' $654,155.55 and ''then and there demanded a delivery of said notes and an assignment of said decree as provided in said contract.'' But said tender and delivery were refused by said bank for the stated reason that it had not in its possession said notes, or an assignment of said decree, and could not accept said tender or comply with said demand for that reason.'' On the same date, September 24th, appellant made known to said executors his desire to comply with the terms of said agreement and secure the assignment and transfer of said decree and notes, and demanded that said executors should make such transfer, said executors refused to make the transfer, and have since so refused.

1. Appellees contend that the tender of September 24th was not an acceptance of the offer extended by the contract, and, therefore, a contract to deliver the notes and assign the decree did not arise. The contract provides:

''*On payment* of said sum promptly within the time aforesaid * * * I hereby agree * * * to deliver said two notes * * * and assign

\*   \*   \*   the said decree   \*   \*   \*   as said Finnerty   \*   \*   \*   may direct, *and payment* of said sum   \*   \*   \*   may at the option of said Finnerty   \*   \*   \*   be made by depositing said sum to my credit   \*   \*   \*."

This, in terms, was a promise to deliver and assign when payment should be made, and a stipulation that payment might be made at the option of Finnerty, or his assignees, by making the deposit in the manner recited in the contract. The offer to make the deposit, appellees say, did not amount to a tender, and was not equivalent to a payment for the purpose of saving rights under the contract because there was coupled with it a demand for a contemporaneous delivery of the notes and an assignment of the decree. If the offer made to the bank September 24th operated as a payment for the purpose of avoiding the loss of rights under the contract, then appellant accepted the offer made by the contract within the time limited thereby, that is, he satisfied the condition upon the performance of which Stratton had promised to deliver and assign. The contract was to deliver the notes and assign the decree upon payment; when payment was tendered, mutual dependent covenants arose, on the one part to deliver and assign, on the other to pay.

"The general rule is to consider all covenants dependent in the absence of a contrary intention, for this is the way most men make their bargains, neither party intending to perform unless the other at the same time performs on his part, and the same is held when no time is fixed for the performance by either." —Vol. 9, Am. and Eng. Ency. of Law, 689.

"A covenant or obligation to pay and therewith pass title is mutual and dependent, the one cannot be required before the other is ready to be performed."

—*Barren v. McAllister*, 33 W. Va. 738; 2 Minor's Inst., 779.

"In case of dependent covenants to be performed contemporaneously, neither party is required to perform until the other does. An offer to perform upon condition of performance by the other party is sufficient."—Vol. 6, Am. and Eng. Ency. of Law (2d ed.), 33.

"Tender is not invalid because it is coupled with a demand for the performance of reciprocal duty enjoined by law upon the person to whom the tender is made."—2 Vol. 28, Am. and Eng. Ency. of Law (2d ed.), 33.

"For the purpose of avoiding * * * the loss of any rights or privileges the tender is the exact equivalent of payment, and it does not have to be repeated * * *. Tender when rejected operates as payment."—Words and Phrases, Vol. 8, pp. 69, 110.

We are justified in concluding that if tender had been made to Stratton living, within the life of the contract, its effect as such would not have been impaired by a demand for a delivery of the notes and an assignment of the decree. The tender although accompanied with such demand would, for the purpose of saving rights, have been the equivalent of payment. That such would have been the effect of the tender, if made to Stratton living, we do not understand to be denied, but it is said that the demand coupled with the offer to the bank defeated its operation as a tender. The contract gave to Finnerty, or his assignee, the option of making payment to and at the bank, and in terms provided that upon payment being so made the notes would be delivered and the decree be assigned. The obligation of Stratton, according to the terms of the contract, was to be the same whether payment was made to him in person

or to and at the bank. The rights of Finnerty were to be the same whether he paid Stratton in person or made payment to and at the bank. The rights of Finnerty, or his assignee, were dependent upon his making payment in one of the modes prescribed by the contract, and his rights were to be the same whichever mode of payment he saw fit to adopt. This being true, if tender of payment to Stratton would entitle Finnerty to demand contemporaneously therewith a delivery of the notes and an assignment of the decree, and if such tender coupled with such demand would operate as a payment for the purpose of an acceptance of the option and an avoidance of the loss of any rights thereunder, such tender made to the bank, coupled with such demand, had a like effect as if made to Stratton.

*Mueller v. Nortmann,* 116 Wisconsin 469, is in point. Klein for a valuable consideration gave plaintiff this option:

"In case said J. F. Mueller elects to purchase said land under this option, he is to pay at the office of Theo. Mueller, in Milwaukee, Wis., within four weeks from date thereof, forty-nine hundred and seventy-five dollars, when a warranty deed of said land shall be delivered,   *   *   *."

Within the time limited plaintiff tendered at the office of said Theo. Mueller the sum mentioned in the option, but the said Mueller refused to accept the same, assigning as his reason therefor, the death of Klein. An action was brought to enforce specific performance. The court held that the action would lie, saying:

"Within that period (the period named in the contract) the plaintiff did everything that the written option required him to do. He went to the office designated, and tendered the sum specified, as his election to complete his option. That tender was to

the very person designated in the option, at whose office the money was to be paid. The payment of the money at the place stated was the only condition imposed upon the purchaser.    *  .*  *    The tender at the place designated was all that the option required.''

We think that the tender at the bank was an acceptance of the offer, that it satisfied the condition necessary to entitle the appellant to a delivery and assignment of the securities contracted for, and that a mutual contract then arose by appellees to deliver and assign, and by appellant to pay.

2.    It is next contended that the judgment below dismissing the complaint should stand, because the complaint, even though it stated facts showing a valid contract to assign the securities, did not state such facts as entitled appellant to specific performance, because it is said appellant had an adequate remedy by an action at law for damages. The following are the facts pertinent to this question, as such facts appear from the complaint: July, 1902, a decree was entered in said suit of The United States Mortgage and Trust Company against H. C. Brown finding the amount due June 20th, 1902, on the unpaid notes secured by said mortgage to be $623,332.32, the mortgage to be a first lien on the real estate covered thereby, and ordering a sale of said real estate to satisfy said indebtedness, and the expenses of foreclosure. The aggregate indebtedness to satisfy which the sale was to be made was $662,000.00. July 16th, 1902, Stratton made the contract hereinafter set out to sell said securities for $650,000.00, to be paid on or before sixty days. Stratton died before the expiration of the life of the option. After his death and before the expiration of the sixty days the tender, hereinbefore set out, was made, and this suit was brought December 5th, 1903. Appellant desired to become

a purchaser of the Brown hotel property; at the sale ordered to be made under the decree it would require about $700,000.00 to make the bid; by becoming the owner of the notes, mortgage and decree, appellant would have legitimate advantages in bidding at the sale that others would not have; by owning the securities the enormous sum, which he would probably have to bid at the sale, would draw interest from the date of his purchasing the securities to the date of sale, regardless of any postponement thereof; the officer making the sale might be slow in fixing a date of sale; the sale when noticed might be postponed; the sale when made might be set aside by the court; in the event appellant became the purchaser at the sale he might acquire the property, or there might be a redemption from the sale within any time before the expiration of nine months from the date of sale; how long his money would remain so invested is uncertain; how long it would require to reinvest so large a sum is uncertain.

It is contended upon the part of appellee that specific performance will not lie for the reason above stated, that appellant had an adequate remedy at law in damages.

Appellant contracted for the specific securities covered by the contract; he had legitimate reasons for purchasing these securities, which reasons were, presumably, known to Stratton. An action at law for damages would not give to appellant that which Stratton contracted to sell him by the contract, appellant could not go upon the open market and with the damages procured at law purchase other securities which would answer the same purpose for which he legitimately desired to purchase these specific securities. If he had brought an action at law for damages immediately upon a breach of the contract to sell him the securities, the amount of his damages

would have been a matter of conjecture. It would have been impossible to say how long his funds would have been invested in these particular securities, perhaps some one else would have bid in the property at the date of the sale. If appellant had purchased, it would be uncertain as to whether or not there would be a redemption therefrom, and if so, when.

When an action at law for damages will not answer the justice of the case, and an action for specific performance will do so, the action for specific performance will lie. The general principle has thus been announced in the courts of this state:

"That courts of equity have jurisdiction to decree the specific performance of agreements, whether relating to personal or real property, is well settled. * * * The ground of the jurisdiction when assumed is, that the party seeking equitable relief cannot be fully compensated by an award of damages at law."—*Frue et al. v. Houghton et al.,* 6 Colo. 318, 319.

"The old rule, that the remedy must pertain to an interest in realty, has been relaxed, and modern decisions decree the performance where the subject-matter is purely personal."—*Colo. L. & W. Co. v. Adams,* 5 Colo. App. 193.

The following cases furnish illustrations of the application of the doctrine that specific performance will lie upon contracts pertaining to personalty when there is an adequate remedy at law in damages.

*Buxton v. Lister,* 3 Atkins 382, was specific performance by the vendor upon an agreement by defendants to purchase several timber trees marked and growing at the time. While the court dismissed the bill on an affirmative defense, it was held that specific performance would not lie upon such a contract.

*Wright v. Bell,* 5 Price (Exchequer Reports) 325, was a bill against the purchaser to compel the specific performance of a contract for the purchase of a debt. Held, the action would lie.

*Adderly v. Dixon,* 1 Sim. and Stu. 607, was specific performance at the suit of the vendor upon a contract for the sale of debts proved under a commission of bankrupt. It was held the action would lie. In the course of the opinion the court said:

"Courts of equity decree the specific performance of contracts, not upon any distinction between realty and personalty, but because damages at law may not in the particular case afford a complete remedy. Thus a court of equity decrees performance of a contract for land, not because of the real nature of the land, but because damages at law, which must be calculated upon the general money value of the land, may not be a complete remedy to the purchaser, to whom the land may have a peculiar and special value. So a court of equity will not generally decree performance of a contract for the sale of stock or goods, not because of their personal nature, but because damages at law, calculated upon the market price of the stock or goods, are as complete a remedy to the purchaser as the delivery of the stock or goods contracted for, inasmuch as with the damages he may purchase the same quantity of the like stock or goods."

*Furman v. Clark,* 11 New Jersey Equity 306, was an action of specific performance upon a contract by which the defendant agreed to furnish the complainant with clay on board his boats at a certain price, the clay to be delivered from time to time while navigation was open, and the delivery to run through a period of seven years. Defendant delivered the clay according to contract during the first year, during the second year he failed to make delivery accord-

ing to the contract, and declined to make further deliveries. While the bill was dismissed for lack of proof of the facts, it was held that specific performance would not lie upon such a contract because the damages sustained could not be measured in an action at law.

In *Cutting v. Dana*, 25 N. J. Eq. 265, specific performance was sustained upon an agreement made by the defendant with the complainant by which the former agreed to assign to the latter a certain debt.

In *Brown v. Runals*, 14 Wisconsin 693, an action of specific performance was sustained to compel the defendant to deliver to the plaintiff certain notes and a mortgage securing the same, which defendant had agreed to restore plaintiff upon the payment of a debt, to secure which the notes and mortgage had been hypothecated to the defendant by plaintiff. The debt had been paid. The court upheld specific performance, and while the special ground of the decision is the trust relation created by the contract, yet the court considered that the facts, aside from the trust feature, justified specific performance.

In *Shockley v. Davis,* 17 Ga. 177, the court upheld an action for specific performance upon an agreement of Shockley to turn over to the plaintiffs certain evidences of debt to secure them from loss by reason of their suretyship for the defendant.

*Gottschalk v. Stein,* 69 Maryland 51, was an action of specific performance upon a contract of the defendant Gottschalk to transfer to the plaintiff certain promissory notes. The action was upheld, the court, *inter alia,* said:

"Now in this case the appellant agreed to sell to the appellee three promissory notes of Weiler & Son, and appellees agreed to buy these notes for a specific purpose, which was known to the appellant, an action at law for a breach of the contract would not, it is

clear, give to the appellees the subject-matter of the contract, and besides the damages to be recovered must necessarily be uncertain.''

The principle of law announced by the foregoing authorities, and by others not cited, is, that if under the facts of the particular case before the court there is not an adequate remedy in an action at law, specific performance will lie; whether the action can be maintained depends upon the facts of each particular case. In the case before us an action at law will not satisfy the justice of the case, because it will not give to appellant the specific securities which he for good reasons contracted to purchase of Stratton, and because the damages by appellant otherwise sustained by a breach of the contract cannot be estimated in an action at law.

The former opinion herein will be withdrawn and a judgment of reversal entered.

Judgment reversed.                    *Reversed.*

Decision *en banc.*

Mr. JUSTICE GODDARD not participating.

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY dissenting.