## No. 17,638.

### OREST E. GERBAZ v. ARTHUR B. HULSEY, ET AL.
(288 P. [2d] 357)

Decided October 3, 1955.   Rehearing denied October 24, 1955.

Messrs. PETRE & ZIMMERMAN, attorneys for plaintiff in error.

Mr. ROBERT DELANEY, Mr. KENNETH BALCOMB, attorneys for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

For convenience defendants in error Arthur B. Hulsey, Zella E. Sadler, Maurice C. Johnson and Fernetta M. Johnson will be referred to as plaintiffs, and where necessary to distinguish between them, by his or her individual name. Plaintiff in error, Gerbaz, will be referred to as defendant, or by name. C. Z. Buckles, another defendant in error, will be referred to by name or as third party defendant.

On January 6, 1954, Orest E. Gerbaz, plaintiff in error, entered into a written contract with Arthur B. Hulsey, Zella E. Sadler, Maurice C. Johnson and Fernetta M. Johnson, whereby Gerbaz agreed to sell and Hulsey, Sadler, Maurice Johnson and Fernetta Johnson agreed to purchase certain ranch property in Pitkin County, Colorado, for $55,255 to be paid as follows: $3,115 paid on signing the contract, $10,250 to be paid "on or about February 1, 1954" and the balance of $41,890 to be paid at the rate of $2,000 per annum, together with interest at five per cent per annum, for a period of fourteen years, and the remaining balance to be paid on or before fifteen years after January 6, 1954. The contract contained provisions for the execution of a deed of trust to secure the balance, and the usual provisions for the delivery of abstract of title and conveyance of a merchantable title. In addition, Hulsey agreed to assign to Gerbaz "as additional security" a contract of sale dated December 22, 1953, between Hulsey and one E. B. Howard "covering nine rental units and the residence of Arthur B. Hulsey in San Simon, Arizona, upon which there is a principal balance of $60,000 plus $15,000 interest due and owing." It was "understood and agreed, however, that so long as the second Parties [Hulsey and associates] are not in default under the terms of this contract that the said Arthur B. Hulsey shall collect all payments made under said contract." It further provides that "the failure of the second parties [Hulsey and associates] to make the payments herein provided for or to perform any of the covenants and agreements herein

contained shall render this contract void, and the first party [Gerbaz] shall retain all payments as liquidated damages."

This contract of purchase and sale was negotiated by C. Z. Buckles, a licensed real estate broker with whom Gerbaz had the property listed.

Hulsey and his associates instituted this action against Gerbaz alleging the execution of this contract and that, notwithstanding their performance of and readiness to perform all terms thereof by them to be carried out, Gerbaz refused to convey the property and they sought as damages against Gerbaz for breach of the contract the sum of $3,115 by them paid, together with the further sum of $1,000 in favor of Maurice C. Johnson and Fernetta M. Johnson for loss by them sustained in removing from Iowa to Colorado in reliance on the contract and its performance by Gerbaz.

Gerbaz made Buckles a third party defendant and alleged the $3,115 down payment had been paid to Buckles and was by him held, and Gerbaz sought judgment against Buckles "for all sums that may be adjudged against defendant [Gerbaz] in favor of plaintiffs" together with other and further relief.

Gerbaz put in issue the allegations of the complaint and by two counterclaims filed by him sought to have the contract declared void and that he recover the sum of $3,115 as liquidated damages. He also alleged Hulsey falsely represented that the December 22, 1953, contract respecting the Arizona property was free from encumbrance, and that there was then payable to Hulsey $60,000 and "$15,000 representing interest accrued on said dates under said contract of sale" and that said contract was "good paper."

Buckles, third party defendant, by appropriate pleadings admitted he had received the $3,115 down payment made by Hulsey and associates; alleged he was entitled to $2,100 commission as broker in said transaction, for which he sought judgment against Gerbaz. He paid into

court the sum of $1,015, being the balance of the deposit in his hands.

After issue joined and conclusion of all evidence offered by the respective parties, the trial judge took the case from the jury; entered judgment in favor of plaintiffs and against defendant for $3,115, together with the further sum of $406.70 in favor of plaintiff, Maurice C. Johnson, and against defendant; and a judgment in favor of C. Z. Buckles and against defendant in the sum of $2,100. From these judgments defendant brings the case here by writ of error, seeking reversal.

It is urged the trial court erred (1) in overruling defendant's motion for an order requiring plaintiffs "to make an election of their remedies before proceeding to trial;" (2) in overruling defendant's motion for a directed verdict in his favor; (3) that the trial court erred in rendering judgments against defendant in favor of plaintiffs and third party defendant.

█ Plaintiffs did not plead two inconsistent claims in their complaint. Had they done so they might have been called upon to elect on which claim they would proceed. Plaintiffs' action was a simple one and for damages naturally arising out of the alleged breach of the written agreement. There was nothing in the pleadings which required an election.

█ The position taken by counsel for defendant apparently is that the so-called Arizona contract was not as represented in the contract between the parties and not as represented in the negotiations preceding the execution of the purchase and sale contract. If this was actually the fact then defendant was in a position to elect, when he discovered the fact, either to rescind the contract, or to sue for damages resulting from the alleged misrepresentation. *Wark v. Bopp,* 119 Colo. 12, 199 P. (2d) 892. Had defendant elected to rescind, he was in duty bound to plaintiffs to restore the moneys they had paid down on the contract, and to give notice of his intention to rescind promptly upon learning of the

alleged fraud or misrepresentation. *Bankers Trust Co. v. Hall,* 116 Colo. 566, 183 P. (2d) 986; *Fidelity Ins. Co. v. Groff,* 124 Colo. 223, 235 P. (2d) 994. In the instant case defendant did not even plead an intention to restore plaintiffs to the status quo.

The evidence discloses that on February 24, 1954, defendant repudiated the contract for alleged misrepresentation on the part of plaintiff Hulsey and at the same time attempted to declare a forfeiture of all plaintiffs' interest in the contract for their failure to pay the $10,500. Defendant was in no position to treat the contract as binding for the purpose of declaring a forfeiture and at the same time repudiate the contract because of alleged fraud. He could not affirm and at the same time disaffirm the contract.

The essential facts are not in dispute. From the evidence the trial court found that at least until February 16, 1954, defendant considered the contract in full force and effect and then without any right to disavow the contract, on February 24, 1954, unequivocally refused to go ahead with the agreement.

It is the position of defendant's counsel that plaintiffs were, under the contract, obligated to tender the $10,500 on or before February 1, 1954, and because they did not do so defendant was entitled to retain the $3,115 deposit. They further contend there was actionable fraud consisting of representations allegedly made by Hulsey in connection with the collateral security, being the Arizona contract which defendant said he found unacceptable.

It is undisputed that subsequent to February 1, 1954, defendant was insisting on performance of the contract and called upon the parties to produce the Arizona contract. Nowhere in the contract is time made the essence of the agreement, and this fact, together with the conduct of the parties as evidenced by the record, makes it crystal clear that February 1, 1954, was not regarded as the time when the $10,500 had to be paid or

tendered to avoid a forfeiture of the deposit. Neither the contract nor the conduct of the litigants indicates the contracting parties regarded time as of the essence of the contract, or as an essential, inherent ingredient of their dealings. When defendant refused to perform under the contract, he had not delivered to plaintiffs an abstract of title to the property, although plaintiffs were entitled to an abstract of title and an opportunity to examine the title to the propery they were to purchase.

The trial court found there was no actionable fraud; that the tender was obviated by the absolute and unqualified refusal of defendant to perform. Tender is not required where it would be an idle or useless thing.

The trial court further found that Buckles, the third party defendant, was entitled to a commission in the sum of $2,100, as broker. Defendant refused to consummate the deal and under the circumstances the broker was entitled to his commission since the deal failed because of defendant's action. The trial court found, and we agree, that defendant had no right to refuse to complete the deal, and under C.R.S. 1953 117-2-1 the judgment in favor of Buckles was correct. Buckles' judgment was a determination that he was entitled to a commission of $2,100. He has the money in his possession, hence defendant is entitled to have the Buckles judgment satisfied of record. The $1,015 deposited in court by Buckles may be applied on the judgment in favor of plaintiffs. This was the obvious intention of the trial judge.

We have examined with care all matters urged by counsel for defendant for reversal and find them to be without merit. Observing no prejudicial error in the record, the judgments are affirmed.

MR. JUSTICE CLARK not participating.