**R. SUNG, a/k/a Roger Sung, Plaintiff-Appellant,**

v.

**Hazel E. McCULLOUGH, Defendant-Appellee.**

**No. 81CA0590.**

Colorado Court of Appeals, Div. I.

June 24, 1982.

Rehearing Denied July 22, 1982.

**448**

Gibson, Gerdes & Palmer, Paul J. Gerdes, Colorado Springs, for plaintiff-appellant.

Lambrecht & Bushnell, R. Dennis Lambrecht, Colorado Springs, for defendant-appellee.

VAN CISE, Judge.

Plaintiff, R. Sung (lessee), appeals a judgment entered in favor of defendant, Hazel E. McCullough (lessor), granting her possession of her restaurant and denying lessee's claim for damages. We affirm in part and reverse in part.

There is no substantial conflict in the evidence material to this appeal. The lessee operated the restaurant beginning in 1978 under a lease which provided:

"That should the premises be destroyed or rendered uninhabitable through no fault or act of the Lessee, either by fire or otherwise, this lease shall terminate forthwith and any prepaid rents shall be adjusted forthwith between the parties."

In the early morning of September 26, 1980, a fire occurred in the building, causing substantial damage and necessitating closure of the business. By order of lessor, repair work commenced that same day and continued until the restaurant had been restored to approximately the condition it was in before the fire and was reopened on February 12, 1981. Both parties were insured by the same company; both used insurance proceeds to pay for the restoration, and the contractor was working for both. Neither party claimed that the other had caused the fire.

In the 53 days between the fire and November 18, there had been numerous contacts between the parties. Lessee had kept his restaurant manager, Mrs. Matthews, on the job, and she was working on the premises most of the time. Lessor was there several times, and talked to Matthews concerning the work being done. They also talked on the telephone. Lessor's son, as lessor's agent, dealt with the building contractor and had conversations with Matthews. Matthews was consulted from time to time and made suggestions to the lessor's son or the contractor concerning linoleum, colors, wallpaper, and minor structural changes, some of which were adopted. During this time lessee, in addition to keeping Matthews on the payroll, incurred other substantial expenses, only part of which is reimbursable by insurance. These would not have been incurred had he known lessor intended to terminate and had he not planned on reopening the restaurant.

On November 18, 1980, lessor served Matthews with a notice declaring the lease terminated based on the fire termination provision and on other grounds not material here. Although lessor and her son both knew that she regarded the lease as ended by the fire, neither had communicated that fact to lessee or to anyone on his behalf until the serving of the notice. To the contrary, lessee had proceeded in the belief that he would be operating the restaurant as soon as the repairs had been completed.

With the termination of the lease, lessee stood to lose the approximately $300,000 he had invested in the business, less only the salvage value of his equipment and fixtures. He was also faced with the loss of the anticipated profits for the balance of the original lease term and for the extension option period, and the loss of the right of refusal in event of future sale.

When lessee refused voluntarily to give up possession, lessor filed a forcible entry and detainer action in the county court seeking possession of the leased premises, basing her claim primarily on the same lease provision. Lessee raised affirmative defenses, including waiver, estoppel, and lack of any grounds for termination. He then commenced a separate action against lessor in the district court, asking for a judgment for the amount of lessor's fire insurance proceeds. Lessor, in her answer, denied lessee's claim and counterclaimed for possession as in her original action. In reply, lessor pled the same defenses to the counterclaim. The county court action was certified to the district court, and the two cases were consolidated under the present caption.

After a trial to the court, it entered judgment in favor of lessor for restitution of the premises based solely on the fire termination provision, and held against lessee on his claim for damages. This appeal followed.

Lessee contends that, on the above facts, lessor either waived the fire termination provision of the lease or is estopped from relying on it as grounds for termination and that, therefore, the trial court erred in concluding lessor did not mislead lessee and in granting restitution to lessor. We agree.

■ Where, as here, the material facts are not disputed, the determination of whether there has been a waiver is a matter of law, *Tisdel v. Central Savings Bank & Trust Co.,* 90 Colo. 114, 6 P.2d 912 (1931); *Widman v. Barry,* 63 Colo. 427, 168 P. 31 (1917), and a reviewing court is not bound by the trial court's conclusion. *Cordillera Corp. v. Heard,* 41 Colo.App. 537, 592 P.2d 12 (1978), *aff'd,* Colo., 612 P.2d 92 (1980); *see Weed v. Monfort Feed Lots, Inc.,* 156 Colo. 577, 402 P.2d 177 (1965).

From the standpoint of lessee, the purpose of the fire termination provision is to protect him from having to continue his lease obligations when he is, in effect, dispossessed and unable to use the premises, and to enable him to make arrangements to lease elsewhere. For lessor, it protects her from being required to rebuild. However, when, as here, lessor commences rebuilding with the intention of restoring the restaurant so that it will be in substantially the same condition as before, and that is known by lessee, and lessee wants to continue under the lease, enforcing the fire provision serves only to impose a heavy forfeiture on lessee.

■ Forfeitures are looked upon with disfavor. *Murphy v. Traynor,* 110 Colo. 466, 135 P.2d 230 (1943). Any act done by a lessor with knowledge of an existing right of forfeiture which recognizes the existence of the lease is a waiver of the right to enforce the forfeiture. *Merkowitz v. Mahoney,* 121 Colo. 38, 215 P.2d 317 (1949). "[W]aiver may be shown by a course of conduct signifying a purpose not to stand on a right, one leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon." *Swedish-American Bank v. Koebernick,* 136 Wis. 473, 117 N.W. 1020 (1908). *See also Williams v. Gulick,* 170 Colo. 347, 461 P.2d 211 (1969); *Wishered v. Noonen,* 71 Colo. 218, 205 P. 530 (1922).

■ By immediately commencing the restoration process and by failing to communicate to lessee within a reasonable time (and 53 days, under the circumstances of this case, is too long a time to be reasonable) that she intended to enforce the fire termination provision when she knew lessee was incurring expenses in reliance on and incident to resuming operations, lessor engaged in a course of conduct which constituted a waiver of her right to enforce termination and forfeiture. Thus, restitution was improperly granted.

In view of our disposition of this appeal on the waiver issue, it is not necessary to address the other contentions on appeal.

The judgment in favor of lessor on the damages/insurance proceeds claim is affirmed. The judgment of restitution is reversed, and the cause is remanded for further proceedings consistent with this opinion.

COYTE, J., concurs.

STERNBERG, J., dissents.

STERNBERG, Judge, dissenting.

I respectfully dissent.

Application of the doctrine of waiver requires a finding that there was an intentional relinquishment of a known right. *Ewing v. Colorado Farm Mutual Casualty Co.,* 133 Colo. 447, 296 P.2d 1040 (1956). *See also Shoemaker v. Mountain States Telephone & Telegraph Co.,* 38 Colo.App. 321, 559 P.2d 721 (1976). Intent is a question of fact. *Williams v. Gulick,* 170 Colo. 347, 461 P.2d 211 (1969). Thus, the majority begs the question in addressing waiver as a matter of law.

The majority opinion substitutes its own findings of fact for that of the trial court on the contested issue of whether there was an intention to waive a known right by the lessor. Based upon disputed testimony, the trial court concluded that the lessor did not intend to waive or relinquish the paragraph in the lease terminating the tenancy upon the premises becoming uninhabitable. Hence, the trial court's resolution of that question of fact should be accepted on review. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). We are not at liberty to substitute our conclusions, drawn from conflicting evidence, for that of the trial court. *Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970). Inferences to be drawn from evidence are also a trial court function. *Peterson v. Ground Water Commission,* 195 Colo. 508, 579 P.2d 629 (1978).

The statement of facts in the majority opinion omits presentation of evidence which would serve as a foundation for the trial court's decision. The contractor was on the premises at the behest of the insurance adjuster. Both lessor and lessee carried insurance with the same company, and thus, it cannot be inferred that the adjuster was, as a matter of law, the lessor's agent. There is evidence that the lessor did not authorize any communications between the contractor and the manager. There is no support in the record for the statement in the majority opinion that the lessor talked to the manager concerning the work or that the lessor knew that the lessee was incurring expenses: the lessor was in touch with the lessee's manager only once— right after the fire—but her salary and the rent was being paid by the insurance company under Sung's policy. Evidence of contacts between lessor's son and the lessee's manager is limited to two "conversations" during which the manager asked that changes be made in construction but the lessor's son refused. In this regard, the court made no finding that the son was the agent for the lessor. Also, there is evidence that the lessor attempted to contact her attorney immediately after the fire to give notice of termination but was unable to do so because he was out of town. Thus, in my view there is evidence to serve as a basis of the trial court's conclusions: therefore, they should be binding on review.

Furthermore, the provision in the lease terminating it if the premises become uninhabitable is clear and unambiguous, and thus, it is error to attempt to interpret the language to arrive at the intention of the parties. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.,* 195 Colo. 253, 577 P.2d 748 (1978). The lease says it is terminated under the circumstances found by the court to have occurred: a fire rendered the premises uninhabitable. The majority opinion adds to the clear language of the lease a requirement that the lessor notify the lessee that it intends to terminate the lease. And, where, as here, the provision of the lease itself requires the result, the mere general policy of looking upon forfeitures with disfavor is no reason to refuse to enforce the lease as written. *School District RE–2(J) v. Panucci,* 30 Colo. App. 184, 490 P.2d 711 (1971).

The trial court's resolution of the complex factual issues presented should be affirmed.