**Joan K. DURAN, Petitioner,**

v.

**The HOUSING AUTHORITY OF the CITY AND COUNTY OF DENVER, Respondent.**

**No. 86SC269.**

Supreme Court of Colorado,
En Banc.

Sept. 12, 1988.

Manuel A. Ramos, Claudia E. Abernethy, Denver, for petitioner.

Jimmie D. Mills, Denver, for respondent.

ROVIRA, Justice.

We granted certiorari to review a decision of the Superior Court of the City and County of Denver affirming a judgment of the Denver County Court against petitioner, Joan Duran, in an unlawful detainer action filed by The Housing Authority of the City and County of Denver (D.H.A.). The county court entered a money judgment in favor of the D.H.A. for $114.52, representing rent due and costs, and also awarded possession of petitioner's rental unit to the D.H.A.

We conclude that the D.H.A. waived its right to terminate Duran's lease, and further, that her tender of rent constitutes a valid defense to the unlawful detainer ac-

tion. Accordingly, we reverse the judgment of the superior court.

## I.

The basic facts in this case, as established at trial, are undisputed. Duran and her two children are residents of public housing owned and operated by the D.H.A., a quasi-municipal corporation created to provide housing for low-income persons. *See* §§ 29–4–201 to –232, 12A C.R.S. (1986).

In line with federal regulations governing public housing, Duran had a lease which detailed, *inter alia,* the terms of the tenancy, the formula for computing monthly rent, and the procedures involved in the termination of a tenancy.[1] In November 1985, Duran's monthly rent was $71 which she failed to pay because she lost her job and there was a delay in receiving welfare payments.

On November 7, 1985, a notice demanding payment of rent within fourteen days was posted on Duran's premises by the D.H.A. This notice, entitled "Notice of Rent Delinquency and Proposed Lease Termination," was served pursuant to Duran's lease and the federal regulations.[2] Essentially, this notice provided that "unless this rent is fully paid, within fourteen (14) days from the date of the delivery of this notice to you [or November 21, 1985] ..., the Authority intends to terminate and cancel your month to month lease." The notice went on to state "[w]e surely hope that you will make up the rent payments you owe, so that you can remain in your unit." Duran failed to respond to this fourteen-day notice, and on November 25, 1985, the D.H.A. posted a notice on her premises, giving her an additional three days to either pay the delinquent rent or, in the alternative, to vacate the premises and deliver possession to the D.H.A. This three-day notice period is required by state statute.[3]

On December 3, 1985, after Duran failed to respond to the three-day notice, the D.H.A. filed a complaint in the Denver County Court seeking recovery of possession of the premises, judgment for rent in the amount of $71, and costs.

On either December 4 or 5, Duran telephoned the D.H.A. housing manager, Ar-

---

1. Public housing authorities such as the D.H.A. are *required to operate* their public housing systems in strict compliance with the provisions of the United States Housing Act's requirements concerning leases, 42 U.S.C.A. § 1437d(*l*)(1) (1988), and eviction proceedings, 42 U.S.C.A. § 1437(*l*)(3) (1988). *Samuels v. District of Columbia,* 770 F.2d 184, 188–89 (D.C.Cir.1985). *See also* 24 C.F.R. § 966.4 (1987).

2. A provision of the United States Housing Act provides in relevant part:
   Each public housing agency shall utilize leases which—
   3. Require the public housing agency to give adequate written notice of termination of the lease which shall not be less than—
   B. Fourteen days in the case of nonpayment of rent....
   42 U.S.C.A. § 1437d(*l*)(3)(B) (1988). The requirements of the statute are duplicated in the accompanying federal regulations, which provide that the Public Housing Authority (P.H.A.) "shall not terminate or refuse to renew the lease other than for serious or repeated violation of material terms of the lease such as failure to make payments due under the lease...." 24 C.F.R. § 966.4(*l*)(1) (1987). The P.H.A. is further required to give written notice of termination of the lease of "fourteen days in the case of failure to pay rent." 24 C.F.R. § 966.4(*l*)(2)(i) (1987). Finally, "the notice of termination to the tenant shall state reasons for the termination, shall inform the tenant of his right to make such reply as he may wish and of his right to request a hearing in accordance with the P.H.A.'s grievance procedure." 24 C.F.R. § 966.4(*l*)(3) (1987).

3. After the determination to evict becomes final pursuant to the federally prescribed fourteen-day notice period, the public housing authority must then bring an eviction proceeding "according to the constraints of state law." *Staten v. Housing Authority of City of Pittsburg,* 469 F.Supp. 1013, 1016 (Pa.1979), *vacated & remanded on basis of attorney fees,* 638 F.2d 599 (3d Cir.1980). This second notice "must be delivered to the tenant demanding that the tenant quit the premises within the statutorily prescribed time period." *Id.* In essence, the public housing authority is required to observe a two-notice system: one for complying with federal regulations, the other with state forcible entry and detainer statutes. At the conclusion of the fourteen-day notice period state statutes for unlawful detainer must then be followed if the public housing authority desires to proceed with the eviction. In Colorado, forcible entry and detainer actions are governed by sections 13–40–101 to –126, 6A C.R.S. (1987). According to section 13–40–104(1)(d), 6A C.R.S. (1987), the state notice period is three days.

chie Smith, and offered to pay the rent for November. As testified to by Smith at trial, she told him "that she was going to try to get the money together ... and would we accept it." He responded "I can't accept it Joan, I have already filed [sic] you in court."

On December 6, 1985, a second fourteen-day notice was served by the D.H.A. on Duran. The language of this notice was identical to that of the first fourteen-day notice, except that it made demand for $144 in back rent, and gave her until December 20 to pay. This amount—presumably covering November and December rent—was a little over double the amount sought in the first fourteen-day notice and three-day notice for only the November rent, and in the complaint filed by the D.H.A. in county court.

On December 19, 1985, during the course of the trial, Duran testified that she had the money to pay the November and December rent and offered it to the D.H.A. for "payment within the fourteen-day period as expressed by the second notice." She argued that this notice was in effect a waiver by the D.H.A. of its right to terminate her tenancy and gave her until December 20 to pay the past due rent. Counsel for the D.H.A. refused the offer on the ground that the D.H.A. was in court on a "perfected right to evict for the failures to pay the rent in November, not in December."

The trial court found "that a waiver had not been established by a preponderance of the evidence. The Court would note case law does clearly establish that a waiver must be intentional and there is no evidence before this Court that there was an intentional waiver." Further, the court concluded that "there has been no tender in the legal definition of the term 'tender' including offering with cash in hand of any payment of rent." Finally, the court determined that although Duran may have been confused by the second fourteen-day notice, estoppel should not be invoked to prevent "manifest injustice" to Duran, as she had not proved her case by a preponderance of the evidence. Judgment was en-

tered in favor of the D.H.A. for possession and rent due at the date of trial in the amount of $114.52.

On appeal, the Superior Court, without specifically addressing the issue of waiver, concluded that the D.H.A. was acting within its rights in terminating Duran's lease:

The filed case in the county court should have given the defendant notice that the plaintiff was going ahead with the F.E.D. [forcible entry and detainer] suit. The state statute was operating at this time and since the defendant had never tendered the rent and was still in possession of the property the trial court was correct in awarding the plaintiff the rent due and the possession of the property.

The court also held that "there never was a tender of the rent with cash in hand. Only words were spoken."

We granted certiorari to consider two issues: (1) Whether the D.H.A. waived its right to terminate Duran's lease by serving a demand for past and future rent on her during the pendency of an unlawful detainer action; and (2) Whether Duran's purported tenders of rent during the pendency of the unlawful detainer action are a defense to that action.

## II.

It is established law in Colorado that the three-day notice to quit served upon the tenant pursuant to section 13–40–104(1)(d) constitutes an election by the landlord to terminate the lease unless the notice is rendered ineffective by the tenant's payment of rent. *Aigner v. Cowell Sales Co.,* 660 P.2d 907, 908 (Colo.1983); *Barlow v. Hoffman,* 103 Colo. 286, 290, 86 P.2d 239, 240 (1938). This right of the lessor to a forfeiture of the tenancy based upon a breach of a lease covenant may be waived; such waiver could operate to bar a lessor from claiming the benefits of a previously given notice of termination. *See* 2 *Powell on Real Property* § 250[3] at 372.195 (1986).

As a general rule, the forfeiture of leases is not favored. *Murphy v. Traynor,* 110 Colo. 466, 470, 135 P.2d 230, 231 (1943); *Sung v. McCullough,* 651 P.2d 447, 449

(Colo.App.1982). As a consequence, courts are reluctant to find that a lessee has violated his obligations, sometimes escaping that conclusion by strictly construing the lease provisions against the party seeking to invoke them. *Murphy,* 110 Colo. at 470, 135 P.2d at 231. *See also* 2 *Powell on Real Property* § 231[3] at 330.60(57).

Even where a lessee has been found to have violated his obligations under the lease, as, for example, by failing to pay rent, the lessor may still be barred from terminating the lease because of a court's finding of waiver on the part of the lessor, or a finding that the lessor is estopped from seeking a forfeiture. 2 *Powell on Real Property* § 231[3] at 330.60(60).[4]

Waiver has traditionally been defined as the intentional relinquishment of a known right or privilege. *Department of Health v. Donahue,* 690 P.2d 243, 247 (Colo.1984); *People v. Curtis,* 681 P.2d 504, 514 (Colo. 1984); II *Friedman on Leases* § 16.501 at 887 (2d ed. 1983). A waiver may be explicit, or it may be implied, for example, when a party engages in conduct which manifests an intent to relinquish the right or privilege, or acts inconsistently with its assertion. *Donahue,* 690 P.2d at 247. Although an intention to waive a benefit may be implied by conduct, the conduct itself should be free from ambiguity and clearly manifest the intention not to assert the benefit. *Id.*

Where the material facts are not disputed, the determination of whether there has been a waiver is a matter of law. *Sung,* 651 P.2d at 449 (citing *Tisdel v. Central Savings Bank & Trust Co.,* 90 Colo. 114, 6 P.2d 912 (1931); and *Widman v. Barry,* 63 Colo. 427, 168 P. 31 (1917)). A reviewing court, therefore, is not bound by the trial court's conclusion. *Weed v. Monfort Feed Lots,* 156 Colo. 577, 580, 402 P.2d 177, 179 (1965); *Sung,* 651 P.2d at 449;

*Cordillera Corp. v. Heard,* 41 Colo.App. 537, 539, 592 P.2d 12, 13–14 (1978), *aff'd,* 200 Colo. 72, 612 P.2d 92 (1980).

Waiver may be demonstrated "by a course of conduct signifying a purpose not to stand on a right, one leading, by reasonable inference, to a conclusion that the right in question will not be insisted upon." *Sung,* 651 P.2d at 449 (citing *Williams v. Gulick,* 170 Colo. 347, 461 P.2d 211 (1969); and *Wisherd v. Noonen,* 71 Colo. 218, 205 P. 530 (1922)). In describing waiver, this court has declared that "any act done by a landlord with knowledge of an existing right of forfeiture, which recognizes the existence of the lease is a waiver of the right to enforce the forfeiture." *Merkowitz v. Mahoney,* 121 Colo. 38, 42, 215 P.2d 317, 320 (1949). *See also Werner v. Baker,* 693 P.2d 385, 387 (Colo.App.1984); *Kelley v. Morgan,* 42 Colo.App. 223, 225, 595 P.2d 1058, 1060 (1979).

An act of the landlord which is frequently relied upon to establish waiver is the acceptance of rent subsequent to knowledge of the breach of the lease by the lessor. *See, e.g., Merkowitz,* 121 Colo. at 42, 215 P.2d at 320 (having made his election to accept rent due after violation of the lease, the landlord cannot thereafter rely upon the past default as grounds for terminating the lease). *Haack v. Great Atlantic & Pacific Tea Co.,* 603 S.W.2d 645, 653 (Mo.App.1980); *Highland Plastics, Inc. v. Enders,* 109 Cal.App.3d Supp. 1, 167 Cal. Rptr. 353, 359 (1980). A waiver can also bar a lessor from claiming the benefit of a previously given notice of termination. *See generally* 2 *Powell on Real Property* § 250[3] at 372.195 n. 52.

In the instant case, although we conclude that Duran tendered the rent at trial, within the second fourteen-day notice period, *see* section III., *infra,* the D.H.A. did not accept it. This case, therefore, does not

---

4. One commentator has described the difference between waiver and estoppel as follows:

Waiver, in the context of landlord-tenant law, generally involves the question of acceptance of rent with knowledge of a breach of a covenant or condition by the lessee, while estoppel involves proof by the lessee that the lessor caused him to believe that strict adherence to lease terms would not be required. Unlike estoppel, waiver does not require that there be fraud or misrepresentation involved or that prejudice result to the party asserting waiver.

2 *Powell on Real Property* § 231[3] at 330.60(60) n. 134.

fall within the line of cases described above. The inquiry turns to whether any of the D.H.A.'s other actions nevertheless demonstrate sufficient lack of consistency regarding its intentions as to constitute waiver. *Merkowitz*, 121 Colo. at 42, 215 P.2d at 320.

■ The housing authority maintains that its initiation of the unlawful detainer action should be viewed as negating any intention of waiving termination of Duran's lease. Petitioner, however, argues that the housing authority's second fourteen-day notice recognized the continuing validity of the lease at a time when the unlawful detainer action was pending; as such, the D.H.A. implicitly waived its right to terminate her lease for nonpayment of rent. We agree with the petitioner.

The second fourteen-day notice to pay rent or quit the premises should be regarded as a waiver of the first two notices which had been issued. 3A *Thompson on Real Property* § 1360 at 695 (1981). "Giving a second notice after the expiration of the first is, in effect, an admission that a tenancy still subsists, and is a waiver of the first notice. Upon receiving the second notice, the tenant unquestionably has the right to suppose that the landlord had waived the first notice, and that the tenancy would continue until the time fixed in the last notice and act accordingly." *Id.* at 696. This second fourteen-day notice could reasonably be said to have led Duran to believe that eviction would not really be carried out until the second notice period had expired.[5] After all, the second fourteen-day notice simply added an additional month's rent onto the amount initially owed by petitioner, and repeated the demand issued in the first notice, couched in the language of a proposal, that Duran could either pay or quit the premises. Under these circumstances, we believe that it is reasonable for Duran to have concluded that the second notice superseded any previous notice given.

The question then becomes whether the second fourteen-day notice operated to effectively waive the D.H.A.'s right to terminate Duran's lease, or whether it should be interpreted merely as a reminder to this tenant to quit at the time previously agreed upon. We conclude, based upon the precise language used, that the D.H.A. waived its right to terminate petitioner's lease.

This court has previously held that a landlord may accept payment of back rent under an agreement to stop the pending litigation and recognize the continuation of the terms of the lease; further, "[t]his would constitute a waiver." *Merkowitz*, 121 Colo. at 43, 215 P.2d at 320. Here, such an agreement can be inferred from the language of the notice, which specified that if Duran made up the rent payments that she owed she could remain in the unit; *i.e.*, the D.H.A. would stop the pending unlawful detainer action. In other words, the final message from the D.H.A. to the petitioner suggested that the lease was still in effect and that petitioner still had an opportunity to preserve her tenancy.

We cannot help but recognize the obvious inconsistency between the pending eviction proceeding and the second fourteen-day notice sent to Duran, which specifically provided that full payment of the rent would preserve her right to continue in her leasehold. The sending of this notice by the D.H.A., affirming as it does a proposed continuation of the lease, and otherwise inconsistent with an intention to declare a forfeiture, is sufficient on these facts to establish a waiver on the part of the housing authority. Other courts have found a waiver in analogous circumstances. *See, e.g., Windsor Properties v. Great Atlantic & Pacific Tea Co.*, 35 Conn.Supp. 297, 408 A.2d 936 (1979) (court required to find waiver of lease forfeiture in view of obvious inconsistency between letter—which specified that a failure to remedy violations of lease by certain date would result in termination of the lease—and

5. In fact, Duran testified that she understood the second fourteen-day notice to mean that Archie Smith, the D.H.A. manager, had changed his position regarding the termination of the tenancy, since Smith had signed the notice with knowledge of the pending unlawful detainer action.

pending eviction proceedings); *Rietsch v. T.W.H. Co.*, 702 S.W.2d 108, 118 (Mo.App. 1985) (letter which purported to invoke forfeiture not absolute in its terms; final paragraph indicated desire to negotiate. This fact furnished basis for inference that landlord intended waiver.).

Our holding in the instant case reflects a common sense distinction between: (1) A notice of default that purports to terminate a lease unconditionally on a specified date, which gives the tenant merely a waiting period to pack and leave; and, (2) A notice that gives the tenant time to "cure" the default and restore himself to good standing. *See* II *Friedman on Leases* § 16.2 at 834. Here, the language contained in the second fourteen-day notice presents a clearcut case of the latter.

It is correct, as the D.H.A. argues, that this court has previously held that "a suit in ejectment by a landlord against the lessee is an irrevocable election to declare the lease terminated, and that ... the receipt of rent after such suit [has] begun does not revoke the forfeiture." *Perry v. White*, 69 Colo. 234, 237, 193 P. 543, 544 (1920) (therefore, neither claim for rent made during the trial of the cause nor the suit in county court waived the forfeiture). Nevertheless, the notice at issue in *Perry* which initiated the termination did not contain the language in the fourteen-day notices sent by the D.H.A. It is difficult to conclude that a notice which gives the tenant a choice between paying rent and remaining in one's unit on the one hand, and quitting the premises on the other, constitutes an election to declare the lease terminated.

Similarly, other cases supposedly standing for the proposition that service of a second notice after suit has been commenced on a prior notice does not effect a waiver, *see, e.g., Mississippi Glass Co. v. Poland*, 134 F.2d 169 (8th Cir.1943); *Shelby County Housing Authority v. Thornell*, 144 Ill.App.3d 71, 98 Ill.Dec. 88, 493 N.E.2d 1109 (1986); *Mitchell v. Tyler*, 335 Ill.App. 117, 80 N.E.2d 449 (1948), are distinguishable on their facts in that the respective notices to terminate fail to give the tenant the option of curing the default

by paying the rent due and thereby remaining a tenant in good standing.

We will not carry the doctrine of waiver to such an extent that "it will be presumed from a mere reminder to the tenant to quit at a time agreed upon." 3A *Thompson on Real Property* § 1365 at 697. Here, the second notice went much farther than that, for Duran was advised that if she paid the two months' rent due within the fourteen-day deadline, she would be allowed to remain in her unit. Our review of these facts leads us to conclude that the D.H.A. waived its right to terminate Duran's lease when it sent out the second fourteen-day notice, assuming that the rent was indeed paid by December 20. We now examine the issue of "tender" to determine whether, given waiver of forfeiture, Duran complied with her obligation to pay the rent she owed.

### III.

The county court found that "there has been no tender in the legal definition of the term 'tender' including offering with cash in hand of any payment of rent." Similarly, the superior court concluded that "there never was a tender of the rent with cash in hand. Only words were spoken."

A tender is an unconditional offer of payment consisting in the actual production, in current coin of the realm, of a sum not less than the amount due on a specified debt or obligation. *O'Donnell v. Chamberlin*, 36 Colo. 395, 91 P. 39 (1906); *Davidson v. Rogers*, 471 P.2d 455, 458 (Okla.1970); *Bembridge v. Miller*, 235 Or. 396, 403, 385 P.2d 172, 175 (1963). The tendering party must have the ability for immediate performance. *Carpenter v. Riley*, 234 Kan. 758, 761, 675 P.2d 900, 904 (1984). Further, the money to be tendered must actually be produced and made available for acceptance and appropriation of the person to whom it is offered. *Bembridge*, 235 Or. at 402, 385 P.2d at 175; *Zion's Properties, Inc. v. Holt*, 538 P.2d 1319, 1322 (Utah 1975). As we have stated in the context of waiver, where the facts are undisputed, the sufficiency of a purported tender is a matter of law. *See*

*Weed v. Monfort Feed Lots,* 156 Colo. at 580, 402 P.2d at 179.

A tender of rent due under the terms of a lease, if properly made and kept good, renders an attempt to terminate the lease for nonpayment of rent ineffectual, as the tender is equivalent to payment so far as the terms of the lease are concerned. *Barlow v. Hoffman,* 103 Colo. 286, 290, 86 P.2d 239, 240 (1938). A tender of an amount due cannot preclude the lessor from attempting to terminate the lease, however, where the amount tendered is anything less than the full amount due. *Id.; International Industries v. United Mortgage,* 96 Nev. 150, 156, 606 P.2d 163, 166 (1980). If, therefore, Duran tendered all of the rent due within the notice period, that would be a defense of the unlawful detainer action.

■ Duran made two tenders of rent to the housing authority. The first was made the day after the unlawful detainer action was filed in county court when she talked to Archie Smith on the telephone. Since the time periods set forth for payment in the first fourteen-day notice and the three-day notice had expired (on or about November 21, and November 28, 1985, respectively), the D.H.A. had no obligation at that time to accept petitioner's conditional offer of payment. *International Industries,* 96 Nev. at 156, 606 P.2d at 166 (absent legal excuse or justification, only a tender of the full amount due made before a declaration of termination can preclude the lessor from electing to terminate the lease); *Briggs v. Electronic Memories & Magnetics Corp.,* 53 Cal.App.3d 900, 905, 126 Cal.Rptr. 34, 37 (1975) (a landlord can refuse rent tendered after the expiration of the notice period). Apart from the question of the sufficiency of Duran's initial tender, the fact that the offer was made after the first fourteen-day and three-day notice periods had expired renders an attempt to use this initial offer of tender to prevent the termination of her lease ineffectual.

■ A different story is presented, however, with petitioner's second tender of rent made in court on December 19, 1985, one day before the expiration of the second fourteen-day notice period. The record reveals that the following exchange took place during trial, while the petitioner was being questioned on redirect examination by her attorney:

Question: Do you have $141 to give to the defendant—the plaintiff today?

Answer: I have $100—I think I have $144.

Question: One hundred and forty-four, I am sorry?

Answer: Yes.

Petitioner's Counsel: Your Honor, if you will, we would like to give that $144 and offer it in symbol as well as words and tender it to the defendant for payment within the fourteen-day period as expressed by the second notice.

Counsel for D.H.A.: Your Honor, I think we can avoid the histrionics. We are here on a perfected right to evict for the failures to pay the rent in November, not in December and I think it is not relevant to that cause.

Petitioner's Counsel: And we are here because the plaintiff has expressed an intent to accept the entire amount of $144 which is the rent for November and the rent for December and is now unwilling to accept the very payment he asked for.

Duran complied with the second notice when she made a timely, absolute, and unconditional tender that evidenced an ability to perform immediately. Her compliance with the terms of this notice, by tendering rent within the fourteen-day period, bars further action to terminate her lease. *Barlow v. Hoffman,* 103 Colo. at 290, 86 P.2d at 240.

It is true that Duran did not produce and make available the money at trial. *Cf. Bembridge,* 235 Or. at 402, 385 P.2d at 175. Nevertheless, it is well established that actual production of the money or property to be tendered is not necessary if the party to whom it is offered refuses to receive it. *See, e.g., Gerbaz v. Hulsey,* 132 Colo. 359, 365, 288 P.2d 357, 360 (1955) ("Tender is not required where it would be an idle or useless thing."); *Hanauer v. Bartels,* 2

Colo. 514, 523 (1875) ("The conduct of the appellants clearly shows that an actual tender would have been fruitless."); *Kammert Bros. Enter., Inc. v. Tanque Verde Plaza*, 102 Ariz. 301, 306, 428 P.2d 678, 683 (1967) (actual tender unnecessary where it is clear other party will not accept it, rendering the act useless). Our review of the record satisfies us that Duran sufficiently tendered the rent due, and that such tender is a proper defense to the D.H.A.'s unlawful detainer action. *Barlow v. Hoffman*, 103 Colo. at 290, 86 P.2d at 240.

Accordingly, we reverse the judgment entered below and remand for further proceedings consistent with this opinion.

ERICKSON, J., concurs in the result; VOLLACK, J., joins in the concurrence.

ERICKSON, Justice, concurring in the result only.

In my mind the crucial facts in this case are those relating to the second fourteen-day notice, and the tender and refusal of rent that occurred in the course of the unlawful detention trial. In short, Duran made a tender of the rent in a timely manner in accordance with the demand in the second notice.

Duran made two alleged "tenders" of rent to the Housing Authority. The first was made on December 4, 1985, the day after the unlawful detention action was filed, and consisted of no more than a statement that Duran "would try to get the money together." In addition, the time period set forth in the first, or November 25, 1985, demand for payment or possession had expired and the Housing Authority had no obligation to accept Duran's "offer" of payment, even if the tender had been sufficient. *See International Indus., Inc. v. United Mortgage Co.*, 96 Nev. 150, 606 P.2d 163 (1980) (a tender is ineffective after expiration of the notice to quit); *Briggs v. Electronic Memories & Magnetics Corp.*, 53 Cal.App.3d 900, 126 Cal.Rptr. 34 (1975) (a landlord can refuse a post-notice tender of rent). The trial court correctly found that Duran's December 4,

1985 offer of payment was not a "tender" within the legal definition of the term.

Duran's second tender of rent was made during the trial on December 19, 1985, thirteen days after the second fourteen-day notice was served and is part of the record.

*(Examination of Joan Duran)*

Q: Do you have one hundred and forty-one dollars to give the ... plaintiff today?

A: I have a hundred—I think I have one hundred and forty-four dollars.

Q: One Hundred and forty-four, I am sorry.

A: Yes.

Ms. Abernathy: Your honor, if you will, we would like to give that one hundred and forty-four dollars and offer it in symbol as well as words and tender it to the [plaintiff] for payment within the fourteen day period as expressed by the second notice.

Mr. Mills: Your Honor, I think we can avoid the histrionics. We are here on a perfected right to evict for the failure to pay the rent in November not in December. And I think it is not relevant to that cause.

Ms. Abernathy: And we are here because the plaintiff has expressed an intent to accept the entire amount of one hundred forty-four dollars which is the rent for November and the rent for December and is now unwilling to accept the very payment he asked for.

The second fourteen-day notice did not waive the Housing Authority's right to proceed with its action for unlawful detention, but Duran's *compliance* with the terms of the notice bars further action to terminate the lease. We held in *Merkowitz v. Mahoney*, 121 Colo. 38, 43, 215 P.2d 317, 320 (1974), that "the landlord may accept payment of back rent under agreement to stop the litigation and recognize the continuance of the term of the lease. This would constitute a waiver." In *Marshall v. Davis*, 122 Ky. 413, 91 S.W. 714 (1906), the Kentucky Supreme Court held that a landlord gave up the right to enforce a judgment evicting her tenant by entering into an

**188**

agreement to accept back rent and continue the lease.

In the present case, the Housing Authority advised Duran on December 6, 1985 that:

> We are sorry to have to inform you that, unless this rent is fully paid, within fourteen (14) days from the date of the delivery of this notice to you, or to the premises you now occupy as a tenant of the Authority, the Authority intends to terminate and cancel your month to month lease. *We surely hope that you will make up the rent payments that you owe, so that you can remain in your unit.*

(Emphasis added.)

Duran complied with that notice on December 19, 1985, by making a timely, absolute and unconditional tender that evidenced a present intent and ability to perform. Although she did not produce the money at trial, the Housing Authority's unequivocal rejection of her offer made actual tender unnecessary. *See Gerbaz v. Hulsey*, 132 Colo. 359, 288 P.2d 357 (1955) (tender is not required where it would be idle or useless thing); *Kammert Brothers Enterprises, Inc. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 428 P.2d 678 (1967) (actual tender is unnecessary where it is clear that the other party will not accept it).

Duran's tender of payment therefore was a timely acceptance of the Housing Authority's offer to continue Duran's lease, and, under *Merkowitz* and *Marshall*, the parties' agreement to continue the lease bars the Housing Authority from proceeding with its action to evict Duran. Although a notice and demand to Duran during the pendency of this action was not necessary, the Housing Authority should be bound by the terms of the notice that was served on Duran. To hold otherwise would render the notice meaningless. The Housing Authority could advise its delinquent tenants during eviction proceedings that they could continue their leases upon tender of past due rent, and evict tenants that complied with the notice and demand. Such a result does not give effect to plain language in the notice and would allow the Housing Authority to mislead delinquent tenants.

Accordingly, I would reverse and remand for a further hearing.

I am authorized to say that Justice VOLLACK joins in this concurrence.