Valorie BRIGGS, Plaintiff–Appellee,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Defendant–Appellant.

No. 91CA0126.

Colorado Court of Appeals,
Div. V.

April 9, 1992.

Breit, Best, Richman & Bosch, P.C., Bradley A. Levin, Peggy A. Walker, Denver, Foster, Larson, Laiche & Griff, Timothy E. Foster, Grand Junction, for plaintiff-appellee.

Doehling & Slater, P.C., Gary L. Doehling, Terry D. Slater, Grand Junction, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, American Family Mutual Insurance Company (American), appeals from the summary judgment entered in favor of plaintiff, Valorie Briggs. In its order, the trial court found that the consent to sue clause within Briggs' uninsured motorist policy with American was void and that American was bound by the determination of damages in Briggs' tort action against the uninsured motorist. We agree and therefore affirm.

In November 1987, Briggs was injured in an automobile accident caused by an uninsured motorist. Pursuant to the provisions of her uninsured motorist policy, the parties entered negotiations to settle Briggs' claim. Although American conceded the liability of the uninsured motorist—who had been convicted of vehicular homicide in the death of Briggs' passenger—it was unable to reach an agreement with Briggs as to the damages incurred from the accident.

As pertinent here, the policy provided that if the insurer and the insured were unable to agree on liability or the amount of damages, Briggs had two options to determine the contract benefits she could recover from American: either she could bring suit against American directly, as long as the uninsured motorist was made a defendant and as long as the claim against the uninsured motorist was not barred by the tort statute of limitations; or she could bring suit against the uninsured motorist, provided that she notified American of the action, but any resulting judgment would bind American only if it gave its written consent to be bound.

Accordingly, pursuant to the policy, Briggs timely filed a breach of contract action against American to determine the amount of benefits to which she was entitled. The complaint also contained certain tort claims, including bad faith breach of the insurance contract, for American's alleged misconduct in the handling of her claim.

Briggs did not join the uninsured motorist as a defendant as required by the policy. Instead, on the same date, she filed a separate tort action against the uninsured motorist and, pursuant to the policy, properly notified American. In response, American notified Briggs that it refused to be bound by any resulting judgment entered against the uninsured motorist, but did not challenge her election to file separate suits. Neither party moved to consolidate the two actions.

The uninsured motorist failed to answer Briggs' complaint, and the trial court, on Briggs' motion, entered a default against him. In October 1990, after a full hearing, the court entered a judgment against the uninsured motorist in the amount of $200,000 compensatory and $200,000 exemplary damages. Briggs notified American only of the default. American did not participate in the default judgment hearing.

The breach of contract action was scheduled for trial in December 1990. However, in November 1990, Briggs filed a motion for partial summary judgment asking that American be bound by the default judgment against the uninsured motorist and, thus, be precluded from relitigating damages. The court entered summary judg-

ment for Briggs. Specifically, it found that the consent to sue clause in the policy was invalid, that American was bound by the determination of damages in the tort action, and that the principles of collateral estoppel applied to prevent American from relitigating the issue of damages. The parties settled the claims for tortious conduct prior to the summary judgment hearing.

## I.

## A.

■ American contends that the trial court erred in determining that the consent to sue clause in Briggs' uninsured motorist policy was invalid. We disagree.

■ Parties cannot by private contract abrogate statutory requirements or conditions affecting the public policy of the state. *University of Denver v. Industrial Commission*, 138 Colo. 505, 335 P.2d 292 (1959). Any provision which violates public policy because it attempts to dilute, condition, or unduly limit statutorily mandated coverage may be declared void and unenforceable. *Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58 (Colo.1990).

> The policy provides, in pertinent part: If any suit is brought by you [the insured] to determine liability or damages, the owner or operator of the uninsured motor vehicle or underinsured motor vehicle must be made a defendant and you must notify us of the suit. *Without our written consent we are not bound by any resulting [judgment].* (emphasis added)

> The consent to sue clause, emphasized in the above provision, provides that the insured must relitigate the issue of liability and damages if the insurer does not consent to be bound by the determination of those issues in a tort judgment against the uninsured motorist.

> Colorado's uninsured motorist statute, § 10–4–609, C.R.S. (1987 Repl.Vol. 4A), provides in pertinent part:

> No automobile liability or motor vehicle liability policy insuring against loss re-

sulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42–7–103(2), C.R.S., [of the Motor Vehicle Insurance Responsibility Act] under provisions approved by the commissioner, for the protection of persons insured thereunder who are *legally entitled to recover* damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing. (emphasis added)

■ The purpose of the uninsured motorist coverage mandated by § 10–4–609 is to compensate an insured for loss, subject to the insured's policy limits, caused by negligent and financially irresponsible motorists. *Kral v. American Hardware Mutual Insurance Co.*, 784 P.2d 759 (Colo. 1989); *State Farm Mutual Automobile Insurance Co. v. Nissen*, 835 P.2d 537 (Colo.App.1992). The legislative intent is satisfied by coverage that compensates a person injured by an uninsured motorist to the same extent as one injured by a motorist in compliance with the law. *Terranova v. State Farm Mutual Automobile Insurance Co., supra.*

■ Under the statute, the insurer must pay to the insured, up to the limit of the policy, whatever losses the insured proves he or she is "legally entitled to recover" from the uninsured motorist. Thus, the insured has the burden to prove that the uninsured motorist was negligent and the extent of the damages. This can be done in a judicial proceeding against either the uninsured motorist or the insurer, or in an arbitration proceeding. *Wales v. State Farm Mutual Automobile Insurance Co.*, 38 Colo.App. 360, 559 P.2d 255 (1976); *see Reese v. State Farm Mutual Automobile Insurance Co.*, 285 Md. 548, 403 A.2d 1229

(1979). If the insured meets this burden, then the insurer is under statutory and contractual duty to compensate the insured for his losses.

A consent to sue clause, however, dilutes, conditions, and limits the character of the coverage mandated in the statute. *See Terranova v. State Farm Mutual Automobile Insurance Co., supra.* An insurer, by refusing to be bound, can force an insured, who has already obtained a judicial determination of his losses against the uninsured motorist, to relitigate liability and damages as a condition of recovery. At a minimum, this dilutes coverage by requiring insureds to expend greater resources in order to recover an amount they have already established they are entitled to. *See Winner v. Ratzlaff,* 211 Kan. 59, 505 P.2d 606 (1973) (multiple litigation is never desirable).

At worst, the insured receives an unfavorable verdict in the second proceeding and recovers nothing. *See Vernon Fire & Casualty Insurance Co. v. Matney,* 170 Ind.App. 45, 351 N.E.2d 60 (1976) (allowing two actions to decide identical issues leads to possibly conflicting results). This is contrary to the overriding public policy expressed in the statute of protecting an insured against the danger of uninsured motorists. *See Kral v. American Hardware Mutual Insurance Co., supra* (to protect the insured from "the often devastating consequences of motor vehicle accidents").

Numerous courts have considered the validity of such clauses. The majority have held them invalid because they violate the language and intent of the uninsured motorist statute of their state or because of the desirability of avoiding a multiplicity of suits. *See Nationwide Mutual Insurance Co. v. Webb,* 291 Md. 721, 436 A.2d 465 (1981) (cites 22 cases which have invalidated consent to sue clauses); *see also Heisner v. Jones,* 184 Neb. 602, 169 N.W.2d 606 (1969) (it is desirable to "avoid the multiplicity of suits and the harassment of the insured by the necessity to litigate his rights twice"); *Vernon Fire & Casualty Insurance Co. v. Matney, supra* (regarding the "legally entitled to recover" language of the statute, "it is difficult to imagine that a judgment rendered by a court of competent jurisdiction would not legally entitle [the insured] to recover the damages specified by that judgment"); *cf. Boughton v. Farmers Insurance Exchange,* 354 P.2d 1085 (Okla.1960) ("The judgment against the uninsured motorist determined that plaintiff was entitled to recover from an uninsured motorist and established the amount she was entitled to recover. [The insurer] cannot now say [that] it is entitled to relitigate these issues when it agreed to pay that which has already been determined."); *Dominici v. State Farm Mutual Automobile Insurance Co.,* 143 Mont. 406, 390 P.2d 806 (1964) ("the primary and essential part of the [uninsured motorist] contract was insurance coverage, not the procedure for determining liability"); *Keel v. MFA Insurance Co.,* 553 P.2d 153 (Okla.1976) ("the consent to sue clause which attempts to place the requirement of the insurer's permission as a condition precedent, conditions and limits the character of coverage mandated by the statute"); *but see MFA Mutual Insurance Co. v. Bradshaw,* 245 Ark. 95, 431 S.W.2d 252 (1968) (consent to sue clause protects insurer against collusion, conflicts of interest, and a determination of liability and damages in nonadversary actions).

We join with these courts and hold that consent to sue clauses are void as against public policy.

In its summary judgment, the trial court relied heavily on the Maryland Court of Appeal's decision in *Nationwide Mutual Insurance Co. v. Webb, supra.* American argues, however, that *Nationwide* is inapposite because it invalidated the consent to sue clause, in part, based on that state's prohibition against arbitration clauses in uninsured motorist policies.

In *Nationwide,* the policy in question had both a binding arbitration clause and a consent to sue clause. Maryland's uninsured motorist statute prohibited arbitration clauses in uninsured motorist policies. The court reasoned that the purpose of consent to sue clauses is "to protect the

insurer's right to have its liability determined by arbitration, and where statutes or public policy invalidate the binding arbitration provision, the 'consent to sue' clauses fall with the arbitration clause."

American asserts that because Colorado has no similar prohibition, *see Wales v. State Farm Mutual Automobile Insurance Co., supra, Nationwide's* rationale is irrelevant. Insofar as the court in *Nationwide* decided the question of the validity of the consent to sue clause on the basis of arbitration, we agree. However, *Nationwide* is persuasive for other reasons. Specifically, it determined that consent to sue clauses were inconsistent with the statutory purpose of placing insureds in the same position as they would have been if the uninsured motorist had been insured, and inconsistent with considerations of judicial economy and the desirability of reducing litigation expenses. For these reasons, we reject American's argument.

American further argues that the consent to sue clause is necessary to minimize the likelihood of collusion between an insured and the uninsured motorist and to assure the insurer of a fair determination of the amount of benefits it must pay. *See MFA Mutual Insurance Co. v. Bradshaw, supra.*

While we accept that there exists the possibility of fraud or collusion in this context, we do not view this possibility as justification for the resulting multiplicity of suits. *See Nationwide Mutual Insurance Co. v. Webb, supra.* Moreover, we conclude that the insurer's right to intervene in the tort action between the insured and the uninsured will protect it against collusion and at the same time assure it of a fair determination of damages.

Further, under C.R.C.P. 24(a)(2) a party may intervene as a matter of right if it can show that "the representation of his interest is or might be inadequate and the applicant is or might be bound by the judgment in [the] action." *Howlett v. Greenberg,* 34 Colo.App. 356, 530 P.2d 1285 (1974). *See Senne v. Conley,* 110 Colo. 270, 133 P.2d 381 (1943) (rules of procedure pertaining to

intervention should be liberally construed to avoid multiplicity of suits).

■ Thus, if the insurer believes and can show that representation of its interest "is or might be" inadequate in an action between its insured and an uninsured motorist, under Colorado's rule of liberal construction, it has the right to intervene in an action between the insured and uninsured motorist and to have a full and complete adjudication of all the issues at a single trial. *See Vernon Fire & Casualty Insurance Co. v. Matney, supra* (construing substantially same rule of intervention); *accord Nationwide Mutual Insurance Co. v. Webb, supra; Winner v. Ratzlaff, supra; Heisner v. Jones, supra.*

American argues, however, that intervention is an improper means for the insurer to protect its interests because of the potential that conflicts of interest may arise. We disagree.

First, contrary to American's contention, the insurer will not be undertaking the defense of the uninsured motorist by intervening, even though it may align itself on certain issues with that party. *See State Compensation Insurance Fund v. Gulf Insurance Co.,* 628 P.2d 182 (Colo.App. 1981) (uninsured motorist insurer does not step "into the shoes of the tortfeasor for purposes of the assigned cause of action"); *North Poudre Irrigation Co. v. Hinderlider,* 112 Colo. 467, 150 P.2d 304 (1944) (the intervenor may oppose both the plaintiff and the defendant).

Secondly, while we concede that a conflict of interest may arise, it does not occur simply because the consent to sue clause is invalid. Rather, the potential for such conflict is inherent in uninsured motorist coverage. *See Vernon Fire & Casualty Insurance Co. v. Matney, supra.* The conflict would not be extinguished, as the insurer implies, by requiring the insured to relitigate liability and damages in a separate action against the insurer. Many of the same conflicts would exist in the separate action as in a consolidated action where the insured and the insurer disagree on the amount of the damages. *See Vernon Fire & Casualty Insurance Co. v.*

*Matney, supra* (conflict appears to be ultimately unavoidable); *Heisner v. Jones, supra* (no difference between this situation and the common situation where the carrier has coverage on two insureds involved in the same accident).

Finally, we note that Briggs' policy allowed the insured to bring an action against the insurer to determine liability and damages and required that in such an action, the uninsured motorist "must be made a defendant." Thus, American's policy contemplates an action in which the insurer, the insured, and the uninsured motorist are parties in one action despite conflicts inherent in those circumstances. We fail to see the difference between the insurer requiring the insured to join the uninsured motorist in an action between the insured and the insurer to determine liability and damages and the insurer intervening into the tort action to determine the identical issues.

## B.

█ Insofar as American argues that it was a violation of its right to due process for the trial court to bind it to a judgment in an action in which it was not a party and in which it did not participate, we disagree.

█ In determining that the consent to sue clause is invalid, we emphasize that fundamental principles of procedural due process apply. Only if an insurer has been given adequate notice of the proceeding and an opportunity to protect its interests will it be bound by a judgment against the uninsured motorist. *See Champion Insurance Co. v. Denney,* 555 So.2d 137 (Ala. 1989) (notice protects "the insurance company from unknown or secret actions"); *Nationwide Mutual Insurance Co. v. Webb, supra* ("if the insurer had notice of the tort suit and an opportunity to intervene, [then] the insurer will be bound by the determination in the tort suit regarding the insured's entitlement to damages from the uninsured motorist and the amount of those damages"); *Keel v. MFA Insurance Co., supra* (proper and timely notice to the insurance carrier to avoid prejudice of its rights is all that is necessary).

American argues, however, that it relied on the fact that Briggs brought a separate contract action against American to determine the amount of benefits and, thus, did not think it necessary to intervene in the tort action. Even if we assume that American did so rely, its asserted good faith is not relevant to the question of due process. Due process requires notice and an opportunity to intervene. Here, American had both. It is not, therefore, a denial of due process to bind American to the default judgment.

█ In summary, if an insurer has notice and an opportunity to intervene, but fails to seek intervention, we hold that it will be bound by the resolution of the issues of liability and damages in a tort action between the insured and uninsured motorist.

## II.

Since, by our holding, American is bound by the determination of damages in the default judgment, we need not address other arguments raised by the parties.

The judgment is affirmed.

STERNBERG, C.J., and PLANK, J., concur.