## No. 14,654.

### STONE v. UNION FIRE INSURANCE COMPANY.
(107 P. [2d] 241)

Decided November 4, 1940.

Mr. SAMUEL CHUTKOW, Mr. NOAH A. ATLER, for plaintiff in error.

Mr. DON D. BOWMAN, Mr. ANTHONY F. ZARLENGO, for defendant in error.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THIS action was brought upon an insurance policy to recover loss occasioned by fire. Trial was to a jury, which returned a verdict in favor of insurer, herein designated as the company, and judgment was entered dismissing the complaint. The owner of the insured property, to whom we will herein refer as plaintiff, seeks reversal and has sued out a writ of error. The complaint, among other things, alleges the issuance of the policy in the sum of $5,000 on July 8, 1936, covering certain personal property described therein; ownership in plaintiff; total destruction of the same by fire about July 4, 1937; value of the property to be $12,000; execution of a chattel mortgage on April 20, 1937, by the plaintiff to one J. L. Brownie on the property described in the insurance policy, and notice at that time to Fred C. Jones, agent of the company, of said chattel mortgage, who agreed to execute and forward to plaintiff the necessary endorsements to be attached to the policy; knowledge of the company of this notice to Jones and of his agreement to issue the necessary endorsement concerning the chattel mortgage; and, with this full knowledge, failure of the company to cancel the policy or forfeit the same; that no part of the loss has been paid.

The answer of the company, after admitting the execution and recording of the chattel mortgage, sets up three defenses: (1) A general denial of liability; (2) failure to notify the company of the chattel mortgage under the terms of the policy; (3) fire and loss caused by willful and intentional acts of plaintiff, her agents or employees.

Counsel for plaintiff first contend that the court committed error in the admission, over objections, of hearsay and self-serving evidence. We consider the contention of sufficient importance to detail the setting in which this evidence was admitted.

Plaintiff, in support of her testimony, and to show that Jones had notice of the chattel mortgage prior to

the fire in the early morning of July 5, 1937, introduced the following letter (Exhibit G), dated December 7, 1937:

"Union Fire Insurance Company
Lincoln, Nebraska
Dear Sirs:
We find in looking over our records we failed to attach a mortgage clause to policy number 263102, issued July 8, 1936 in the name of Josie Stone.
We find their [there] is a mortgage of record dated April 20, 1937 and for some reason we failed to attach the proper Endorsement.
We enclose the Endorsement which kindly attach to the old daily and oblige.
Yours truly,<br>Fred C. Jones."

The evidence discloses that after the fire, and on or about September 1, 1937, one of the counsel for the company had an interview with Jones, concerning which he testified as follows:

"I went to see Mr. Jones on or about September 1, 1938 [1937], over at his office. I went in there and told him that I had come to inquire about whether or not he had been notified about a chattel mortgage being placed on the premises of the League of Nations; and he stated that he had not been notified by Mrs. Stone or by Mr. Brownie concerning any chattel mortgage whatever being placed on the fixtures. I then asked him to look thru his records to make sure that he had not been notified, and he thereupon went to a filing cabinet and pulled out a file that he had pertaining to this matter, and looked thru the file, he looked thru the file at that time, and when he got thru looking thru the file he said he had not been notified; that if he had been notified he would have remembered it.

"I asked him whether or not he would be willing to make some kind of a written memorandum to that ef-

fect, and he stated that he would be willing to write a letter to Mr. Don Bowman, representing the company, stating what the result of this interview was. I got up and started to leave, and he said, 'Wait a minute; I will dictate a letter right now.' So I waited and he called in his stenographer, and she came to the desk there and he dictated a letter, addressed to Mr. Bowman, which letter stated in substance what the interview was. After dictating the letter, the stenographer typed it, brought it back into the room, and Mr. Jones signed the letter."

This letter, Exhibit 5, is as follows:

"Mr. Don Bowman
Westside Court
Denver, Colorado
Dear Mr. Bowman:
This is to advise you of the visit of A. F. Zarlengo to whom we explained that never to our knowledge has our office been advised of any Chattle [chattel] Mortgage in case of Josie Stone or the League of Nations Cafe.

Yours truly,<br>Fred C. Jones."

This oral testimony and letter were admitted in evidence over the objections of counsel for plaintiff, on the theory that it was an exception to the hearsay rule, in that it disclosed the state of mind and intention of Jones on September 1, 1937, as related to the chattel mortgage in question. In support of this theory is cited Wigmore on Evidence (3d ed.), vol. VI, sections 1715, 1789 and 1790. Jones died some time prior to the trial. There can be no question that the statements were made, and the letter written and delivered to an attorney of the company by its agent.

██ To a better understanding of the application of the hearsay rule to this testimony, a discussion of first principles will be helpful. Historically, the development of the rule is fully covered by section 1364, Wigmore on

Evidence (3d ed.), vol. V, where it is defined as "that rule which prohibits the use of a person's assertion, as equivalent to testimony to the fact asserted, unless the assertor is brought to testify in court on the stand, where he may be probed and cross-examined as to the grounds of his assertion and of his qualifications to make it." Textwriters generally agree on the existence of some confusion in the reported cases as to the application of the rule, and that assertions, sometimes referred to as verbal acts, are not subject thereto. Section 1715 of Wigmore relates to the topic of "Statements of a Mental or Physical Condition," as an exception to the hearsay rule. It has no bearing on the question before us because the mental and physical condition of Jones were not in issue. Sections 1789 and 1790 relate to verbal acts, in part, cojoined with the principle of res gestae, to which the hearsay rule is not applicable. The illustrations given in the notes to these sections clearly indicate and circumscribe the text. There is no contention here that the assertions before us were a part of the res gestae. The purpose of the evidence concerning them was to show that the agent did not receive any notice of the chattel mortgage from plaintiff prior to the fire. Counsel for the company, to support their contention of admissibility, cite one of the leading cases on this subject, *Mutual Life Insurance Co. v. Hillmon,* 145 U.S. 285, 12 Sup. Ct. 909, 36 L. Ed. 706. In that case Sally Hillmon, the beneficiary named in a life insurance policy issued to her husband, brought suit against the company to recover under its terms. One of the defenses interposed was a denial of the death of the insured, with the further allegation that the body represented to be that of the husband was not such in fact, but was that of one Walters; that Hillmon still was alive and in hiding. This question of identity was the issue presented for determination. Letters written by Walters to his sister and to his sweetheart immediately prior to his disappearance, stating that he intended to go with the insured to another sec-

tion of the country, were held by the trial court to be inadmissible to show his intention in that respect at that time. Mr. Justice Gray, speaking for the United States Supreme Court, which reversed the judgment, quoted from *Insurance Co. v. Mosley,* 8 Wall. 397, the following rule as applicable to the facts: "Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings are original and competent evidence. Those expressions are the natural reflexes of what it might be impossible to show by other testimony. If there be such other testimony, this may be necessary to set the facts thus developed in their true light, and to give them their proper effect. As independent explanatory or corroborative evidence, it is often indispensable to the due administration of justice. Such declarations are regarded as verbal acts, and are as competent as any other testimony, when relevant to the issue. Their truth or falsity is an inquiry for the jury." The court refers to these letters as "written by him at the very time and under circumstances precluding a suspicion of misrepresentations."

This cannot be said concerning the letter here involved. It was written approximately two months after the fire. The conversation and letter were not contemporaneous declarations with any intention or state of mind of Jones "under circumstances precluding a suspicion of misrepresentations." The statement was made and the letter given to the attorney representing the company by its agent. We may state parenthetically that this is not to be construed as a criticism of the attorneys who obtained this evidence. That this occurred after claim was made by plaintiff for the loss by fire under the policy in question may clearly be inferred from the time and circumstances. These assertions or declarations were not the same as those to which reference is made in the Hillmon case, which would take them out of the hearsay rule. The court in that case was not dealing with a narration of past events, but with an existing

intention or purpose with respect to the future. *Shepard v. United States,* 64 F. (2d) 641, 643. The assertions or declarations here fall more nearly within the category of hearsay evidence, as illustrated in *Denver & Colo. Inv. Co. v. Rudolph,* 47 Colo. 380, 107 Pac. 816, and *Manby v. Sweet Investment Co.,* 78 Colo. 371, 242 Pac. 51. The latter case also is authority for the proposition that declarations which violate the hearsay rule are not rendered competent by the subsequent death of the declarant. 22 C.J., p. 216, §179. That such testimony should be admitted in the event of death has been a controversy between lawyers in America for some time, culminating in a resolution by the American Bar Association advocating its admission where the declarations were made before controversy had arisen. See, Wigmore on Evidence, vol. V (3d ed.), p. 435, §1576. No such exception to the hearsay rule has been sanctioned by legislative action or judicial pronouncement in this state.

Counsel for the company contend that these assertions also are admissible on the theory that they are a part of a series of letters or correspondence. There is no such factual situation here. The letter in question (Exhibit 5) is not one of a series or any part of other correspondence. It stands alone. Plaintiff had no knowledge whatever of its existence until it was introduced in evidence at the trial.

■ This evidence is inadmissible for another reason urged by counsel for plaintiff, namely, it clearly is self-serving. "It is a well established general rule that a statement of a party, whether oral or written, which is of a self-serving nature, is not admissible in evidence in his favor. While such statements are usually made because the declarant is for some reason interested, at the time, in having the fact supposed or believed to be as stated by him, the element of present interest is not essential, for it has been considered that the rule applies with full force notwithstanding the fact that the declar-

ant was disinterested at the time when the statement was made. * * *." 22 C.J., p. 220, §193.

That the statement and letter here in question were evidence in favor of the company is clear. See, also, *Idaho Gold M. & M. Co. v. Colorado Iron Works Co.,* 49 Colo. 66, 69, 111 Pac. 553; 29 Am. Jur., p. 1104, §1473. The admission of the evidence was error and clearly prejudicial to plaintiff.

■ Error is assigned by plaintiff to the admission in evidence of three exhibits introduced in support of the defense of willful and intentional burning. Her counsel assert that they were in no wise tied up to or connected with her. There was testimony that immediately prior to the fire an explosion was heard and two unidentified men were seen running near the premises. As the result of an investigation conducted by the assistant fire chief for several days thereafter, he expressed the opinion that the fire was caused by some highly inflammable liquids. He further testified that he found nothing which could cause an explosion. About three weeks or a month after the fire there was brought to the assistant chief by one Mandel, who worked on the debris remaining after the fire, an electric cap and two fuses. These articles were given to Mandel by two of his employees, Daily and Watson, who were not called to testify at the trial. The testimony in the record, as to the place where the cap and fuses were found is purely hearsay. An expert, who was assistant manager of the Du Pont Powder Company, employed by the assistant fire chief, declined to express an opinion as to whether the fire was caused by a dynamite explosion, but, speaking offhand, did not think so. The primary vice in this testimony is that it was not in any way connected with plaintiff or with any of her agents or employees. There was not in evidence even a suspicious circumstance connecting anyone with the cap and fuse incident. Under these circumstances, admission of the exhibits was error and highly prejudicial.

■ Error also is assigned to the refusal of an instruction requested by plaintiff, which included language requiring a greater degree of proof necessary than a "preponderance of the evidence." Because the crime of arson may be imputed from the defense that the fire was the willful and intentional act of plaintiff or her agents, it is urged that an instruction on the quantum of proof necessary should include a statement that the evidence must be "clear and satisfactory," and consideration should be given to the "presumption of innocence which the law throws about the plaintiff." This contention is foreclosed by our opinion in *Brown v. Tourtelotte*, 24 Colo. 204, 219, 50 Pac. 195, in which we held that, "where a crime is imputed in a civil action, its existence may be proved by such evidence as would suffice to prove any other fact involved. That is, 'the result should follow the preponderance of evidence'." No error was committed in the refusal of this instruction.

■ Error is assigned to the refusal of the court to instruct the jury to disregard the second defense, which was to the effect that by reason of the terms of the policy, and the fact that the company had not been notified of the execution of the chattel mortgage, it was not liable. Whether the company was so notified was, under the circumstances, an issue of fact for the determination of the jury. True, there was no direct testimony disputing the oral notification by plaintiff on April 20, 1937. The only issue in regard thereto was the credibility of the witnesses testifying on the subject. That, also, was an issue for the jury. It is not clear whether counsel for plaintiff contend that a "standard mortgage clause" dated April 20, 1937 — the date of the oral notification — issued by Jones December 7, 1937, several months after the fire, constituted a waiver of forfeiture, if there was such, independent of any prior notification. The letter of December 7, 1937, was offered to support the proposition that Jones had notice of the chattel

mortgage prior to the fire, and the only issue made by the pleadings related to notice prior to the fire.

It also is contended that the trial court committed error in submitting to the jury the defense of incendiarism, without sufficient evidence in support thereof. Some of this testimony is mentioned above. The trial court, in denying a motion to strike it, stated: "I am frank to say on the basis of the evidence that it is not very strong, and yet I do not regard it as weak enough to take the case from the jury." A reading of the record discloses that this was not an overstatement. Perhaps the court would not have submitted this defense to the jury without the testimony relating to the cap and fuses. The record does not so indicate. We are, therefore, reluctant to hold that the submission of this defense was error. It may be that on a retrial of the case the court will reach a different conclusion. Nothing we here say should be so construed as to control the trial court's discretion in that respect.

■ The admission of testimony of a witness from the assessor's office, concerning the tax schedule of plaintiff, for the purpose of showing the valuation therein fixed by her, was not error. *Beckwith v. Talbot,* 2 Colo. 639, 651. It would be otherwise if the evidence was that of a valuation fixed by the assessor. *Fort Collins Co. v. France,* 41 Colo. 512, 522, 92 Pac. 953; *Denver & Rio Grande R.R. Co. v. Heckman,* 45 Colo. 470, 474, 101 Pac. 976; *Hildreth v. Longmont,* 47 Colo. 79, 95, 105 Pac. 107.

In view of our conclusions, we deem it unnecessary to discuss other questions raised.

The judgment is reversed and the case remanded with directions to grant a new trial.