948 P.2d 63 (1997)
Doris E. PETERMAN, John H. Peterman, Sally Joseph, and Penny Hardrick, Plaintiffs-Appellees and Cross-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant-Appellant and Cross-Appellee.
No. 96CA0600.
Colorado Court of Appeals, Div. A.
May 8, 1997.
Rehearing Denied June 26, 1997.
Certiorari Granted December 2, 1997.
*64 Law Offices of Steven Taffet, Steven Taffet, Boulder; Harshman & McBee, Donald L. McBee, Grand Junction, for Plaintiffs-Appellees and Cross-Appellants.
James R. Alvillar, Grand Junction, for Defendant-Appellant and Cross-Appellee.
Opinion by Judge BRIGGS.
Defendant, State Farm Mutual Automobile Insurance Company (insurer), appeals the summary judgment in favor of plaintiffs, Doris E. Peterman, John H. Peterman, Sally Joseph, and Penny Hardrick (insureds), on their claim for breach of contract. The insureds cross-appeal the summary judgment in favor of the insurer on the insureds' claims for bad faith breach of insurance contract and exemplary damages. We reverse the summary judgment in favor of the insureds on the claim for breach of contract and remand the cause to the trial court to enter summary judgment on the claim in favor of the insurer and to grant the insurer's motion to compel arbitration. We affirm the summary judgment in favor of the insurer on the insureds' claims for bad faith breach of insurance contract and exemplary damages.
The insurer provided motor vehicle insurance to the insureds, who were injured in a traffic accident. They brought suit against the driver of the other vehicle and his employer, the company that owned the vehicle.
The insureds gave notice of the lawsuit by letter to the insurer. They informed the insurer that the other vehicle may have been uninsured and that, if it were, they intended to make a claim for uninsured motorist (UM) benefits.
After the insureds obtained a default judgment against the company and its driver for $924,000, they requested payment from the insurer of $300,000, the limits of their UM coverage. The insurer refused to tender any payment until the claim had been arbitrated, as required by the policy.
The insureds initiated this action against the insurer, asserting claims for breach of contract, bad faith breach of insurance contract, and exemplary damages. The insurer *65 sought to compel arbitration. Both parties filed motions for summary judgment.
Relying on the reasoning in Briggs v. American Family Mutual Insurance Co., 833 P.2d 859 (Colo.App.1992), the trial court concluded that compelling arbitration would require the insureds to relitigate issues, including liability and damages, already determined in the prior litigation and that this would inappropriately impact their right under § 10-4-609, C.R.S. (1994 Repl.Vol. 4A) to UM protection. It held that, because the insurer had been given notice and an opportunity to intervene in the insureds' suit against the driver and the owner of the uninsured vehicle, it was bound by that judgment and, as a result, was liable for the full amount of the uninsured motor vehicle benefits. The court therefore granted summary judgment in favor of the insureds on the claim for breach of contract. However, because the insurer's obligation to intervene had not been well-settled under Colorado law, the court granted summary judgment in favor of the insurer on the claims for bad faith breach of insurance contract and exemplary damages.

I.
The insurer contends the trial court erred in entering summary judgment in favor of the insureds and against it for the limits of the UM benefits and in refusing instead to compel the insureds to arbitrate their claim. In the circumstances presented here, we agree.
The insurance policy provided for uninsured motor vehicle coverage as follows:
We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
. . . .
Deciding Fault and Amount
Two questions must be decided by agreement between the insured and us:
1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle; and
2. If so, in what amount?
If there is no agreement, these questions shall be decided by arbitration upon written request of the insured or us.
. . . .
We are not bound by any judgment against any person or organization obtained without our written consent.
The purpose of the "consent to be bound" clause is to supplement the clause requiring that the insurer's liability for UM benefits be determined in a separate arbitration proceeding. Therefore, in the circumstances presented here, the two clauses can be analyzed together. See Nationwide Mutual Insurance Co. v. Webb, 291 Md. 721, 436 A.2d 465 (1981).

A.
To support the insurer's position that it was not bound by the insureds' judgment against the uninsured motorist and that it had the right to compel arbitration, the insurer relies on Wales v. State Farm Mutual Automobile Insurance Co., 38 Colo.App. 360, 559 P.2d 255 (1976). There, as in this case, the plaintiff's insurance policy included a provision requiring arbitration of any disagreement concerning UM coverage and the amount of benefits to which the plaintiff was entitled. It further provided the insurer would not be bound by any judgment against an uninsured motorist unless it had given consent to sue.
The plaintiff in Wales informed her insurer she had been involved in an accident with an uninsured motorist, requested arbitration and, at the same time, requested consent to proceed with a lawsuit against the uninsured driver. Although the insurer consented, for reasons not revealed in the record the plaintiff did not proceed with arbitration. She instead proceeded with a lawsuit against the uninsured motorist.
After obtaining a judgment in that action, the plaintiff demanded that the insurer pay *66 UM benefits without arbitration. When the insurer refused the demand, the plaintiff brought an action against it for breach of contract, contending that any provision in the policy which restricted her access to a judicial determination of the damages to which she was "legally entitled" under the UM coverage was invalid.
A division of this court disagreed. It reasoned that, while the General Assembly was concerned with protecting innocent victims of uninsured drivers, this concern was not wholly conclusive of the issue presented. The General Assembly had also been emphatic in fostering arbitration. Taking both public policies into account, the court in Wales held the arbitration clause was enforceable and thus the insurer had not breached its agreement with the plaintiff.
The same conclusion has been reached by courts in other jurisdictions. For example, in Victor v. State Farm Fire & Casualty Co., 795 F.Supp. 300 (D.Alaska 1992), the insured obtained a default judgment against an uninsured motorist and demanded payment of uninsured motorist benefits. The insurer refused to pay because the insured had not complied with the arbitration provision in the insurance policy.
The court in Victor recognized the many cases from other jurisdictions refusing to require relitigation of issues determined in a prior suit against an uninsured motorist, but distinguished them because they required further judicial proceedings to resolve the claim. In contrast, the policy before the court required arbitration. Because of the state's "strong public policy" in favor of arbitration, the court refused to invalidate the arbitration provision. See also Riley v. State Farm Mutual Automobile Insurance Co., 420 F.2d 1372 (6th Cir.1970)(insurer entitled to determine by arbitration UM liability as provided in policy, even though insured had previously obtained default judgment against the uninsured motorist); Sands v. Andino, 404 Pa.Super. 238, 590 A.2d 761 (1991)(insurer entitled to summary judgment upholding right to arbitrate UM benefits, even though insured had obtained default judgment against the uninsured motorist).

B.
In response, the insureds contend Wales stands only for the limited proposition that an insurer can in some circumstances require arbitration rather than having a claim for UM benefits decided in court. They argue the court in Wales did not expressly address the issue presented here: whether, despite notice and an opportunity to intervene in an insured's suit against an uninsured motorist, the insurer can instead wait and demand arbitration after a court has determined the uninsured motorist's liability. The insureds assert that the reasoning in the more recent case of Briggs v. American Family Mutual Insurance Co., supra, supports their position that the insurer is bound by their default judgment against the owner and the driver of the uninsured vehicle and that the arbitration clause is unenforceable.
The insurance policy in Briggs did not contain an arbitration clause. It instead provided that, if the insurance company and its insured were unable to agree on UM liability or the amount of UM benefits, the insured had two options: she could bring suit directly against the insurance company, as long as the uninsured motorist was made a defendant; or she could bring suit against the uninsured motorist, with notice to the insurance company. However, as in this case, the policy provided that the insurance company could not be bound by any judgment against the uninsured motorist absent its written consent.
When the parties in Briggs were unable to agree to the damages the insured had incurred, the insured brought suit against the insurance company but did not join the uninsured motorist. Instead, on the same day, the insured filed a separate tort action against the uninsured motorist. The insured gave notice of that suit to her insurance company, which informed her it refused to be bound by any judgment. After obtaining a default judgment against the uninsured motorist, the insured sought summary judgment in the suit against the insurer, seeking to have the insurer bound by the default judgment.
*67 The court in Briggs concluded that the "consent to sue" clause was void as against public policy. It reasoned that under § 10-4-609 the insurer must pay to the insured, up to the limit of the policy, losses that the insured was "legally entitled to recover." This placed the burden on the insured to prove the negligence of the uninsured motorist and the extent of the damages caused by the negligence. Because that was accomplished in the judicial proceeding against the uninsured motorist, to require the insured to relitigate those issues in another judicial proceeding, at a minimum, would dilute the statutory protection and, at worst, would result in a contradictory award. The court therefore concluded the insurance contract violated the public policy of protecting an innocent insured by taking away the full benefits to which the insured was already "legally entitled."
The same conclusion has been reached by courts in other jurisdictions using the same rationale. This includes at least one case in which the insurance policy required that the claim for UM benefits be determined in arbitration, rather than in a full judicial proceeding. See Nationwide Mutual Insurance Co. v. Webb, supra.
Other courts have reached the same conclusion on the basis that an insurer failing to demand arbitration until after entry of a judgment against the uninsured motorist, despite having notice of the legal proceedings, has waived any right to relitigate the issues decided. See Bryant v. Clark, 62 Ohio St.3d 485, 584 N.E.2d 687 (1992). Still other courts have treated the insurer as "in privity" with the uninsured motorist and applied the doctrine of collateral estoppel to prevent the insurer from "relitigating" any issues decided in the proceedings against the uninsured motorist. See Zirger v. General Accident Insurance Co., 144 N.J. 327, 676 A.2d 1065 (1996).

C.
The position of the insureds is not without substantial merit, and we agree that the rights of an insured to UM protection may not be diluted by unduly burdensome procedural requirements. We nevertheless conclude that if, as here, the policy requires arbitration rather than another judicial proceeding, the insurance policy is enforceable as written.
Initially, we note that, while § 10-4-609 requires insurance coverage for those "legally entitled" to damages from an uninsured motorist, the statute does not specify how that legal entitlement is to be determined in regard to the liability of an insurer. It is the insurance policy that specifies the process for determining whether the insured is "legally entitled" to collect damages so as to bind the insurer.
Specifying a process for reaching the determination when § 10-4-609 is itself silent on the matter does not create any "inherent" conflict with the statutory right to UM benefits. The supreme court has previously concluded that, by enacting § 10-4-609, the General Assembly neither intended to set forth comprehensive requirements for UM coverage nor to bestow upon an insured the right to full indemnification in all circumstances. Rather, a policy provision can be said to violate the statute only if it "directly limits" the benefits to which the insured is entitled. Terranova v. State Farm Mutual Automobile Insurance Co., 800 P.2d 58, 63 (Colo.1990). It cannot be said that the mere act of specifying a procedure for determining the insured's right to recover UM benefits from the insurer "directly limits" such benefits, at least so long as the procedure specified is not unduly burdensome.
Arbitration is a "low cost, speedy" alternative to judicial proceedings. See Garceau v. Iowa Kemper Insurance Co., 859 P.2d 243, 245 (Colo.App.1993). Hence, the burden imposed on the insureds here in having to arbitrate a claim for UM benefits is substantially less than in having to relitigate those issues in a second judicial proceeding, as was required by the policy in Briggs v. American Family Mutual Insurance Co., supra.
We are not persuaded the insureds' right to UM benefits is so substantially burdened by having to arbitrate a claim for those benefits separately from any judicial proceeding against the uninsured motorist that their right to those benefits has thereby been unduly *68 burdened, or "directly limited." As recognized by the division in Wales, we cannot ignore the public policy of encouraging and enforcing agreements to arbitrate. See Mountain Plains Constructors, Inc. v. Torrez, 785 P.2d 928 (Colo.1990); Hughley v. Rocky Mountain Health Maintenance Organization, Inc., 910 P.2d 30 (Colo.App.1995), rev'd on other grounds, 927 P.2d 1325 (Colo.1996). Nor can we ignore that in some cases it will be in the best interest of the insured not to have the insurer forced to intervene as a party in the insured's suit against an uninsured motoristwith the insurer then presenting arguments and evidence in support of the position of it and the uninsured motorist and against that of the insured.
We are likewise unpersuaded by either of the other rationales supporting the insureds' position. First, waiver requires either the intentional relinquishment of a known right, see NationsBank v. Conifer Asset Management Ltd., 928 P.2d 760 (Colo. App.1996), or at least conduct inconsistent with the right combined with prejudice to the other parties. See Klein v. State Farm Mutual Automobile Insurance Co., 948 P.2d 43 (Colo.App.1997). When the insurer has withheld consent to be bound by any judgment against the uninsured motorist as expressly permitted under its insurance policy and has insisted on its contractual right to arbitration, the insurer has neither intentionally relinquished nor acted inconsistently with its right to arbitrate. See Victor v. State Farm Fire & Casualty Co., supra.
As to collateral estoppel, the doctrine would apply only if the insurer were in privity with the uninsured motorist. Parties are in privity when the party in the litigation has adequately represented the interests of the non-party, such as when the party was the virtual representative of the non-party or when the non-party actually controlled the earlier litigation. Public Service Co. v. Osmose Wood Preserving, Inc., 813 P.2d 785 (Colo.App.1991). In many circumstances, the uninsured motorist sued by the insured will not adequately represent the interests of the insurersuch as when the insured obtains a default judgment against the uninsured motorist. See Sands v. Andino, supra (doctrine of collateral estoppel not applicable to bind insurer to default judgment obtained by insured against uninsured motorist).
We therefore conclude that, even though an insurer may have had notice of a judicial proceeding that leads to a judgment in favor of its insured and against an uninsured motorist, the insurer is not bound by that judgment and may enforce a provision requiring that its obligation for UM benefits be determined by arbitration. See Victor v. State Farm Fire & Casualty Co., supra; Wales v. State Farm Mutual Automobile Insurance Co., supra. Hence, the summary judgment in favor of the insureds on their claim for breach of contract cannot stand, and the cause must be remanded for the trial court to enter summary judgment on the claim in favor of the insurer, as well as to grant the insurer's motion to compel arbitration.

II.
On cross-appeal, the insureds assert the trial court erred in entering summary judgment in favor of the insurer on their claims for bad faith breach of insurance contract and exemplary damages claims. We disagree.
The insureds argue the insurer acted in bad faith by failing to intervene in their suit against the owner and the driver of the uninsured vehicle, even though the insurer was aware of that proceeding, and then refusing their demand for UM benefits after they had obtained judgment by default in that proceeding. However, because we have concluded the arbitration provision was enforceable, the insureds' contention fails as a matter of law. See Bucholtz v. Safeco Insurance Co., 773 P.2d 590 (Colo.App.1988).
The insureds further argue the insurer intentionally caused delay and acted in bad faith when it refused to admit that the other vehicle was uninsured, even though it had so noted in its internal records. Even if true, the fact remains that the insurer was entitled to compel arbitration of the insureds' claim. Because the insureds refused to arbitrate, *69 the actions of the insurer did not delay any proceedings.
We therefore conclude the trial court properly entered summary judgment in favor of the insurer on the insureds' claims for bad faith breach of insurance contract and exemplary damages. See Knappenberger v. Shea, 874 P.2d 498 (Colo.App.1994).
The summary judgment in favor of the insureds on their claim for breach of contract is reversed. The summary judgment in favor of the insurer on the claims for bad faith breach of insurance contract and exemplary damages is affirmed. The cause is remanded for the trial court to enter summary judgment in favor of the insurer on the claim for breach of contract and to grant the insurer's motion to compel arbitration pursuant to § 13-22-204, C.R.S. (1987 Repl.Vol. 6A).
STERNBERG, C.J., and KAPELKE, J., concur.