Doris E. PETERMAN, John H. Peterman, Sally Joseph, and Penny Hardrick, Petitioners,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Respondent.

No. 97SC587.

Supreme Court of Colorado, En Banc.

June 29, 1998.

Law Offices of Steven Taffet, Steven Taffet, Boulder, Harshman & McBee, Donald McBee, Grand Junction, for Petitioners.

James R. Alvillar, Grand Junction, for Respondent.

Breit, Bosch, Levin and Coppola, P.C., Bradley A. Levin, Denver, for Amicus Curiae The Colorado Trial Lawyers Association.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' ruling in *Peterman v. State Farm Mutual Automobile Insurance Co.*, 948 P.2d 63 (Colo.App.1997) concerning the operation of a consent to sue clause and an arbitration clause in the uninsured motorist provisions of an insurance contract. Specifically we address: (1) whether an insurer could enforce an arbitration clause relating to uninsured motorist coverage after the insured has already obtained a judgment against the uninsured motorist in an action of which the insurer had notice, but to which the insurer did not consent, and (2) whether certain conduct by an insurer can constitute a waiver of its right to arbitrate.[1]

We now hold that a consent to sue clause which allows an insurer to avoid being bound by a judgment in a suit by an insured against an uninsured motorist is void as against public policy. We further hold that an arbitration clause relating to uninsured motorist coverage in an insurance policy is valid and enforceable. However, when an insurer has notice of, and an opportunity to intervene in, an action brought by its insured against an uninsured motorist, the insurer may be deemed to have waived its right to arbitrate by failing to assert the right or by neglecting to seek intervention in the case. We therefore reverse the judgment of the court of appeals and remand this case to the court of appeals with directions that it return the case to the district court for entry of an order consistent with this opinion.

## I.

In October of 1990, Doris Peterman, John Peterman and their two adult daughters, Sally Joseph and Penny Hardrick, (collectively the Petermans) were involved in an automobile accident with a tractor/trailer truck owned by DEKA Constructors, Inc. (DEKA). At the time of the accident, the Petermans carried an automobile insurance policy with State Farm that included uninsured motorist (UM) coverage.

The policy contains both an arbitration clause and a consent to sue clause. The UM coverage provides:

> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by an accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.
>
> . . . .
>
> **Deciding Fault and Amount**
> Two questions must be decided by agreement between the *insured* and us:
> 1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle;* and
> 2. If so, in what amount?
> If there is no agreement, these questions are to be decided by arbitration upon written request of the *insured* or us.

(Emphasis in original.)

The consent to sue clause provides:

> We are not bound by any judgment against any person or organization obtained without our written consent.

At the scene of the accident, the driver of the DEKA vehicle assured the Petermans that the vehicle was insured by Ohio Casualty Insurance Company. Throughout 1991 and early 1992, the Petermans attempted to verify that DEKA had liability insurance, but they were unable to do so. On three sepa-

---

1. We granted certiorari to consider (1) whether the court of appeals erred by holding that an insurer which fails to intervene in a district court action brought by its insureds against uninsured motorists, after notice and opportunity to intervene, is not bound by the judicial resolution of liability and damages, and that, therefore, the insurer may insist on relitigation of the same issues in a subsequent proceeding; and (2) whether by purposely waiting until after its insureds had fully litigated an action against the uninsured motorists before demanding arbitration, did State Farm waive its right to arbitration?

rate occasions in 1992 and 1993, the Petermans' attorney advised State Farm that DEKA was uninsured at the time of the accident.

On February 25, 1993, the Petermans commenced an action in Mesa County District Court (the tort action) alleging that DEKA's driver had negligently caused them injury and damage in the 1990 accident. The Petermans notified State Farm of the tort action and provided State Farm with a copy of the complaint on March 25, 1993. In the cover letter forwarding the complaint, the Petermans' attorney informed State Farm that the Petermans would make a claim for uninsured motorist protection if DEKA were found to have no coverage. The letter also sought information from State Farm:

> Please advise if there is anything we need to do on behalf of the claimants regarding making a claim for the uninsured motorist coverage. If their insurance policy contains any provisions pertaining to this claim please advise and provide us with a copy of the applicable policy language.

State Farm did not respond.

DEKA failed to answer or appear in the tort action. The Petermans notified State Farm of DEKA's failure to respond, but State Farm continued to decline to participate or to intervene. In May 1993, the Petermans moved for default and provided State Farm with a copy of the motion. The district court conducted an evidentiary hearing on damages on December 10, 1993, and entered a default judgment, awarding damages well in excess of policy limits. Neither State Farm nor the Petermans requested arbitration before judgment entered.

The Petermans then made a demand on State Farm for UM benefits at the policy limit of $300,000. State Farm refused to pay, claiming that the judgment did not bind it. State Farm asserted that regardless of the Petermans' judgment in the tort action, State Farm's liability to the Petermans for UM benefits was subject to arbitration.

State Farm still did not, however, make a demand for arbitration at that time.

The Petermans instituted this action against State Farm in March, 1994, alleging breach of contract, bad faith breach of contract, and willful and wanton conduct, all arising out of State Farm's failure to pay UM benefits. State Farm moved to compel arbitration. From the record it appears that this was State Farm's first demand for arbitration. The parties filed cross motions for summary judgment regarding whether or not State Farm was bound by the judgment in the tort action.

The district court entered judgment for the Petermans in the amount of $300,000 on their claim that State Farm breached its contract. The district court acknowledged the benefits of arbitration and Colorado's policy favoring arbitration as a means of resolving disputes. However, the court also recognized that the benefits of arbitration are negated if an insurer can require its insureds to relitigate in an arbitration proceeding the same issues that have already been resolved in litigation. The court concluded that the arbitration clause was void as against public policy to the extent that it required an insured to relitigate the same issues that had already been decided by a court, so long as the insurer had notice of the proceedings and an opportunity to defend its interests. The district court specifically found that:

> State Farm was provided with a copy of the complaint in March, 1993, and at that time was informed that the case may involve an uninsured vehicle and if the vehicle was uninsured, demand for uninsured benefits from State Farm would be made. State Farm was also notified that the defendants did not file an answer and default judgment was being sought. State Farm, therefore, was provided adequate notice of their potential liability and could have sought intervention. They failed to do so, however, despite the notice given them.[2]

---

2. The district court thus concluded that State Farm had notice that the defendants in the underlying action were uninsured. The issue of what constitutes adequate notice that a defen-

dant is uninsured and that UM coverage will be sought is not before us. This is a question of fact, and we are bound by the district court's findings.

State Farm appealed the entry of summary judgment on the Petermans' breach of contract claim. State Farm, relying on *Wales v. State Farm Mutual Automobile Insurance Co.*, 38 Colo.App. 360, 559 P.2d 255 (1976), argued that the district court erred in refusing to compel arbitration pursuant to the policy language. In *Wales*, the court of appeals held that public policy favors arbitration, and that an insurer could demand arbitration of a UM claim pursuant to language in its policy even though the insured had already obtained a judgment against the uninsured motorist. *See Wales*, 38 Colo.App. at 363–64, 559 P.2d at 257–58. In *Wales*, however, "[n]either party ... allege[d] the occurrence of a waiver of arbitration." *Id.* at 362, 559 P.2d at 256.

The Petermans contended that *Wales* was inapposite because that insurer had not been provided notice of and an opportunity to intervene in its insured's suit against the uninsured motorist. The Petermans asserted that *Briggs v. American Family Mutual Insurance Co.*, 833 P.2d 859 (Colo.App.1992), was controlling. In *Briggs*, the policy did not contain a mandatory arbitration clause. *See Briggs*, 833 P.2d at 860. Rather, the policy provided that if the insurer and the insured were unable to agree on UM liability or the amount of UM benefits, the insured could either: (1) bring suit directly against the insurance company, also naming the uninsured motorist as a defendant; or (2) bring suit against the uninsured motorist with notice to the insurance company. *See id.* As here, the policy in *Briggs* also provided that the insurance company would not be bound by any judgment against the uninsured motorist absent the insurer's written consent. *See id.* The court of appeals invalidated the consent to sue clause, holding that it diluted, conditioned, and limited the character of coverage mandated in the uninsured motorist statute. *See id.* at 862. Thus, where an insurer had notice of an action against an uninsured motorist and an opportunity to intervene, the insurer could not force the insured to relitigate the same is-

sues in a second judicial proceeding. *See id.* at 862–65.

In the instant case, the court of appeals, while recognizing the "substantial merit" of the Petermans' position, nevertheless concluded that the arbitration clause was enforceable under the circumstances. The court of appeals reasoned that since the policy required arbitration, rather than a second judicial proceeding as in *Briggs*, it was not unduly burdensome. *See Peterman*, 948 P.2d at 67.

The court of appeals also determined that State Farm had not waived its right to arbitrate, stating that:

> When the insurer has withheld consent to be bound by any judgment against the uninsured motorist as expressly permitted under its insurance policy and has insisted on its contractual right to arbitration, the insurer has neither intentionally relinquished nor acted inconsistently with its right to arbitrate.

*Id.* at 68.

We now hold, consistent with *Briggs*, that the consent to sue clause is void as against public policy. We agree that the arbitration clause is valid, and not, of itself, unduly burdensome. However, we conclude that State Farm did in fact waive its right to arbitration.

## II.

The issues on certiorari require us to determine whether State Farm was bound by the district court's resolution of liability and damages. Hence, we must necessarily resolve the validity of the consent to sue clause.[3] If the consent to sue clause is valid, then State Farm was not bound. If the consent to sue clause is not valid, then we must turn to the arbitration clause to determine whether State Farm preserved its rights under that clause.

The court of appeals held that "[w]hen the insurer has withheld consent to be bound by any judgment against the uninsured motorist *as expressly permitted under its insurance*

---

**3.** We refer throughout this opinion to the "consent to sue" clause because that nomenclature is commonly used to describe the clause in ques-

tion. More accurately, however, the clause actually requires consent to be bound.

*policy*," it has not waived arbitration. *Peterman*, 948 P.2d at 68 (emphasis added). Hence, that court concluded that the consent to sue clause was valid, and not only protected State Farm from being bound by the judicial resolution, but also negated any waiver of arbitration that could be inferred from its actions surrounding the district court proceeding. We disagree.

We begin by examining the consent to sue clause in the Petermans' insurance contract. Parties may not privately contract to abrogate statutory requirements or contravene the public policy of this state. *See University of Denver v. Industrial Comm'n*, 138 Colo. 505, 335 P.2d 292 (1959). A contract provision that violates public policy by diluting, conditioning or unduly limiting statutory coverage may be declared void and unenforceable. *See Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo. 1990); *Briggs*, 833 P.2d at 862. As we have recently noted, "courts have assumed a 'heightened responsibility' to scrutinize insurance policies for provisions that unduly compromise the insured's interests and have concluded that any provision of an insurance policy which violates public policy and principles of fairness is unenforceable." *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 344 (Colo. 1998); *see also Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585, 589 (Colo.1984) (holding household exclusion in auto liability policy invalid as contrary to public policy expressed in Colorado Auto Accident Reparations Act)(superseded by statute as stated in *Allstate Ins. Co. v. Feghali*, 814 P.2d 863, 865–66 (Colo.1991)); *Newton v. Nationwide Mut. Fire Ins. Co.*, 197 Colo. 462, 468, 594 P.2d 1042, 1046 (1979) (concluding that policy provision that permitted insurer to subtract PIP payments from uninsured motorist coverage reducing coverage below the statutory minimum violated public policy of Colorado Auto Accident Reparations Act).

We are not limited in our examination to the face of the policy, but we also consider whether the effects produced by operation of the policy language are consistent with public policy. *See Huizar*, 952 P.2d at 345.

Here, the Uninsured Motorist Statute mandates:

(1)(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42–7–103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

§ 10–4–609, 3 C.R.S. (1997)(the UM statute).

The purpose of the UM statute is to ensure that individuals injured in an accident will be compensated for their losses even if the other motorist is uninsured. *See Huizar*, 952 P.2d at 345; *State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 168 (Colo.1993) ("[T]he legislative intent behind the statute is to compensate innocent insureds for loss caused by financially irresponsible motorists."). The legislative purpose is satisfied when an insurance policy provides coverage for injury caused by an uninsured motorist to the same extent as for injury caused by an insured motorist. *See Terranova*, 800 P.2d at 60; *Briggs*, 833 P.2d at 861.

The consent to sue clause here, as in *Briggs*, dilutes, conditions and limits the statutorily mandated coverage. The clause requires an insured to expend additional resources to undertake a second proceeding to prove liability and damages if an insurer does not consent to be bound by the tort judgment against the uninsured motorist.

State Farm argues that an important distinction exists between a clause that would require a second judicial proceeding, as in *Briggs*, and a clause that would require an

arbitration proceeding after a court action. State Farm points out that arbitration is a less costly and more efficient method of dispute resolution. However, this is true only when arbitration is used as an *alternative* to judicial proceedings. These benefits are lost when arbitration is implemented after issues have already been resolved by a court of law.

Thus, while arbitration is a speedy and efficient method of resolving disputes, the insured in this situation still bears the added and unnecessary burden of producing evidence and establishing legal entitlement twice. This contravenes the public policy of offering insureds protection against injury caused by uninsured motorists equivalent to that available for injury caused by insured motorists. Accordingly, we hold that consent to sue clauses are void as against the statutory mandate and public policy of this state regarding uninsured motorist coverage.

### III.

■ Having invalidated the consent to sue clause, we must next consider the effect of the arbitration clause in the Petermans' contract. In Colorado, arbitration is a favored method of dispute resolution. *See Wales*, 38 Colo.App. at 363, 559 P.2d at 256. Our constitution, our statutes and our case law all support agreements to arbitrate disputes. *See* Colo. Const. art. XVIII, § 3; §§ 13–22–201 to –223, 5 C.R.S. (1997); *Judd Constr. Co. v. Evans Joint Venture*, 642 P.2d 922, 924 (Colo.1982) (noting that "it has long been the policy of this state to foster and encourage the use of arbitration as a method of dispute resolution"). Thus, absent a conflicting and overriding public policy to the contrary in a particular situation, valid agreements to arbitrate should be enforced as written.

■ As we discussed in Part II hereof, the UM statute is designed to protect insureds injured by uninsured motorists in the same manner as those injured by insured motorists. Both the statute and the insur-

ance policy here at issue require an insurer to pay, up to policy limits, what an insured is "legally entitled to recover" from an uninsured motorist. *See* § 10–4–609, 3 C.R.S. (1997). The insured has the burden to prove liability and damages. *See Briggs*, 833 P.2d at 861–62. The burden can be met in a judicial proceeding against either the uninsured motorist or the insurer, or in arbitration. *See id.* Once the insured meets this burden, the insurer is under a contractual and statutory duty to compensate the insured. *See id.*

■ In this case, we agree with the court of appeals that a policy may specify the process for determining "legal entitle[ment]" to benefits without creating "any 'inherent' conflict with the statutory right to UM benefits." *Peterman*, 948 P.2d at 67. Simply specifying a procedure, such as arbitration, for determining the insured's right to recover UM benefits does not impermissibly burden an insured's rights under the statute. *See id.*

Thus, the arbitration clause conflicts neither with the language of the statute nor with its underlying purpose. We conclude that the arbitration clause in the Petermans' policy is valid and enforceable.

### IV.

■ Lastly, we must consider whether State Farm has waived its right to arbitration. Just as with other contractual rights, the right to arbitration can be waived. *See Mountain Plains Constructors, Inc. v. Torrez*, 785 P.2d 928, 931 (Colo.1990). A party may waive the right to arbitration by taking actions inconsistent with such right in circumstances where prejudice will accrue to other parties. *See Norden v. E.F. Hutton & Co., Inc.*, 739 P.2d 914, 915 (Colo.App.1987).

The trial judge in this case specifically found that State Farm had adequate notice of the Petermans' suit against an uninsured motorist and their intent to claim UM benefits.[4] Nevertheless, State Farm neglected to intervene in the action or otherwise assert its

---

4. State Farm argues that the notice was insufficient because the Petermans did not send a formal, written demand for UM benefits until after default judgment entered. State Farm also ar-

gues that it never received notice that DEKA was uninsured. However, the trial court found to the contrary and the record reflects that the Petermans' attorney told a State Farm claim represen-

right to arbitration.[5] Indeed State Farm made no effort to request arbitration until after the Petermans filed suit for breach of contract and bad faith.

The Petermans kept State Farm apprised at every step of their process and even asked State Farm to inform them of any action they might need to take regarding a UM claim. The Petermans have now litigated their claim to a final judgment. That judgment reflects legal entitlement to collect from an uninsured motorist. In this instance, the defendant defaulted and the Petermans did not spend the time and money required for a contested trial. But the failure of the defendant to appear in no way undermines the validity of the judgment or the nature of the issues resolved by the judgment.

■ State Farm chose to stand mute, awaiting a specific demand from the Petermans for payment of an uninsured motorist claim. We recognize that the insurer becomes almost adversary to its own insured in the context of uninsured motorist coverage, but that conflict does not vitiate the underlying contractual and quasi-fiduciary duty that the insurer owes its insured. We also note that the *Briggs* case was announced prior to the time the Petermans filed the tort action against DEKA. The *Briggs* holding should reasonably have caused State Farm some concern about its responsibility to seek intervention in the tort action or otherwise assert its view of the primacy of the arbitration clause.

■ The Petermans would indeed be prejudiced if they were forced to commence and complete yet another proceeding to prove liability and damages. Thus, we conclude that State Farm waived its right to arbitration when it neglected to assert that right, and instead allowed the tort action to proceed to judgment.[6]

## V.

Consent to sue clauses dilute, condition and unduly limit the statutorily mandated

---

tative, in March of 1992, that DEKA's purported insurer had denied coverage. The Petermans' policy defines an Uninsured Motor Vehicle as a vehicle for which "the insuring company denies coverage." In July of 1993, the Petermans' counsel again told a claim representative that "there was no insurance coverage for DEKA."

5. As the court of appeals in *Briggs* noted, C.R.C.P. 24(a)(2) allows a party to intervene as a matter of right if it can show that "the representation of his interest is or might be inadequate and the applicant is or might be bound by the judgment in [the] action." *Briggs*, 833 P.2d at 863 (quoting *Howlett v. Greenberg*, 34 Colo.App. 356, 530 P.2d 1285 (1974)). Many jurisdictions have adopted the view that an insurer may intervene in their insured's action against an uninsured motorist. *See, e.g., Terzian v. California Cas. Indem. Exch.*, 42 Cal.App.3d 942, 117 Cal. Rptr. 284 (1974); *Vernon Fire & Cas. Ins. Co. v. Matney*, 170 Ind.App. 45, 351 N.E.2d 60, 64 (1976); *Rawlins v. Stanley*, 207 Kan. 564, 486 P.2d 840 (1971); *Dominici v. State Farm Mut. Auto. Ins. Co.*, 143 Mont. 406, 390 P.2d 806 (1964); *Boughton v. Farmers Ins. Exch.*, 354 P.2d 1085 (Okla.1960).

Furthermore, section 13–22–204, 5 C.R.S. (1997), requires a court to order arbitration upon a proper showing by one of the litigants in an action of a valid agreement to arbitrate. *See* § 13–22–204, 5 C.R.S. (1997).

6. In so holding we join numerous other jurisdictions that have reached similar conclusions under similar facts. *See, e.g., Christiansen v. Farm-*

*ers Ins. Exch.*, 540 F.2d 472, 475 (10th Cir.1976) (binding insurer to default judgment in diversity case where insurer had notice but refused to take action, and noting similarity to other cases that "in all the cases, the factor found by the courts to be critical appears to be the knowledge and seeming acquiescence of the insurer"); *Champion Ins. Co. v. Denney*, 555 So.2d 137, 139 (Ala. 1989) (finding that insurer had "implied obligation to respond to correspondence giving notice of intent to institute legal action against the uninsured motorist" and binding insurer to resulting default judgment); *Moorcroft v. First Ins. Co.*, 68 Haw. 501, 720 P.2d 178, 180 (1986) (finding waiver of arbitration clause where insurer had notice and opportunity to intervene in action against uninsured motorist); *Andeen v. Country Mut. Ins. Co.*, 70 Ill.App.2d 357, 217 N.E.2d 814, 818 (1966) (holding that insurer waived arbitration by neglecting to intervene and demand arbitration in action against uninsured motorist and stating that the insurer "cannot take advantage of its own failure to act in order to avoid liability under the contract of insurance"); *Indiana Ins. Co. v. Noble*, 148 Ind.App. 297, 265 N.E.2d 419, 437 (1970)("[T]he insurance company was fully advised as to the filing and pendency of the suit against the uninsured motorist and chose to take no action at all, [hence] we hold ... that the judgment against the uninsured motorist is binding upon the insurance company.").

coverage for uninsured motorists, and thus are void as against public policy. By contrast, clauses requiring arbitration of disputes between insureds and insurers regarding liability and damages for injuries caused by uninsured motorists are valid and enforceable. They encourage speedy, fair resolution of UM coverage disputes and are consistent with public policy. However, as with other contractual rights, the right to arbitration may be waived if an insurer acts inconsistently with such right and seriously prejudices the insured. State Farm received timely and repeated notices of the Petermans' action against the uninsured motorist yet refused to assert a demand for arbitration. State Farm's inaction would have prejudiced the Petermans by forcing them to undertake a second proceeding to prove liability and damages. Hence, State Farm waived its right to arbitration. Accordingly, we reverse the judgment of the court of appeals and remand this case to the court of appeals with directions that it return the case to the district court for entry of an order consistent with this opinion.

VOLLACK, C.J., dissents, and SCOTT, J., joins in the dissent.

Chief Justice VOLLACK dissenting:

The majority holds that a consent to sue clause in an uninsured motorist provision of an automobile insurance policy is void as against public policy. The majority also holds that the insurer in this case waived its right to arbitrate by not intervening in litigation brought by its insured against an uninsured motorist. I disagree with both of these conclusions. In my view, the issue of the validity of the consent to sue clause is not before this court. Nevertheless, I believe that consent to sue clauses are valid and enforceable because they do not dilute, condition, or limit statutorily mandated insurance coverage. I also believe that the insurer in this case did not waive its right to arbitrate and was not obligated to intervene in litigation between the insured and an uninsured motorist. Accordingly, I dissent.

I.

On October 27, 1990, Doris and John Peterman, along with their adult daughters Sally Joseph and Penny Hardrick (the Petermans), were traveling on I–70 near Palisade, Colorado, when they were involved in an automobile accident. The Petermans' vehicle was insured under a policy issued by State Farm Mutual Insurance Company (State Farm). According to the accident report filed by the investigating officer, the Petermans' vehicle struck a spare tire which had fallen off a truck owned by DEKA Constructors, Inc., and driven by Bruce Malonson (jointly, the uninsured motorist). The accident report also indicated that the vehicle was insured under a "pending" insurance policy with Ohio Casualty Insurance Company and observed "no obvious damage" to the Petermans' vehicle and no injuries except Doris Peterman's soreness.[1]

On February 25, 1993, the Petermans filed suit against the uninsured motorist seeking damages for injuries sustained in the accident. Although the Petermans notified State Farm of the complaint, State Farm was not named as a party. On March 25, 1993, the Petermans sent State Farm a letter which provided in part that

[t]o date, we have been unable to determine if there is insurance coverage on the trucks which caused this accident. If no coverage is found, we will be making a claim against State Farm for uninsured motorist protection.

After the uninsured motorist did not respond to the Petermans' complaint, a written order of default was entered. Following a hearing to determine damages in which the Petermans, a treating physician and a treating chiropractor testified, judgment was entered in favor of the Petermans for $924,954.20. On December 15, 1993, counsel for the Petermans sent State Farm a letter "demanding payment of the $300,000.00 underinsured benefits which are available under the Peter-

---

1. Six months later, Doris Peterman contacted the investigating officer to report further injuries and property damage resulting from the accident.

mans' policy."[2] The letter was forwarded to State Farm's legal counsel for an opinion, and, on January 21, 1994, he responded that State Farm was not bound by the default judgment and that the Petermans' claim could be submitted to arbitration to determine issues of liability and damages.

On March 10, 1994, the Petermans filed suit against State Farm in Mesa County District Court (the district court), claiming, *inter alia,* that State Farm was bound by the default judgment and that State Farm acted in bad faith by withholding uninsured motorist benefits. Both parties moved for partial summary judgment on the question of whether the default judgment was binding on State Farm. On April 11, 1994, the Petermans sent State Farm a written demand for arbitration "[i]n the event the Court rules that [State Farm] is not bound by" the default judgment. On May 31, 1994, State Farm moved the district court to compel arbitration.

The district court granted the Petermans' motion for partial summary judgment, concluding that State Farm was bound by the default judgment and that

> insofar as the arbitration provision requires a party to relitigate the same issues which have been decided by a court of law wherein that party had notice of the proceedings and an opportunity to defend its interests therein, such is void as against public policy.

After the trial court refused to reconsider this ruling and rejected the Petermans' claims for bad faith and exemplary damages, both parties appealed. The court of appeals reversed, concluding that

> even though an insurer may have had notice of a judicial proceeding that leads to a judgment in favor of its insured and against an uninsured motorist, the insurer is not bound by that judgment and may enforce a provision requiring that its obli-

gation for [uninsured motorist] benefits be determined by arbitration.

*Peterman v. State Farm Mut. Auto. Ins. Co.,* 948 P.2d 63, 68 (Colo.App.1997).

## II.

The State Farm insurance policy provides uninsured motor vehicle coverage as follows:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
>
> . . . .
>
> Deciding Fault and Amount
>
> Two questions must be decided by agreement between the insured and us:
>
> 1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle; and
>
> 2. If so, in what amount?
>
> If there is no agreement, these questions shall be decided by arbitration upon written request of the insured or us.
>
> . . . .
>
> We are not bound by any judgment against any person or organization obtained without our written consent.

Even though the issue has not been raised on certiorari and was not ruled upon by either the district court or court of appeals,[3] the majority concludes that the consent to sue clause in the State Farm policy, providing that State Farm is not bound by another judgment without State Farm's written consent, is contrary to public policy and, as a consequence, is unenforceable. This holding essentially affirms the outcome in *Briggs v. American Family Mutual Insurance Co.,* 833 P.2d 859, 862 (Colo.App.1992), where the

---

**2.** Although the Petermans were apparently seeking payment of uninsured motorist benefits, the reference to underinsured benefits in this letter is especially problematic because both uninsured and underinsured benefits are covered by the same section of the State Farm policy.

**3.** The majority asserts that the court of appeals in this case held that the consent to sue clause

was valid. *See* maj. op. at 491. I disagree. The court of appeals merely relies upon the validity of the consent to sue clause in dismissing the Petermans' arguments that State Farm waived its right to arbitrate. *See Peterman,* 948 P.2d at 68. In other words, the court of appeals, apparently recognizing that the enforceability of the consent to sue clause was not at issue, accepted its validity. In my view, this court should do the same.

court of appeals struck down a similar provision on public policy grounds.[4] In my view, this question is not before the court and should not be addressed. Nevertheless, I disagree with the majority that the consent to sue clause is void on public policy grounds.

In the absence of ambiguity, an insurance policy must be given effect according to the plain and ordinary meaning of its terms. *See Farmers Ins. Exch. v. Dotson*, 913 P.2d 27, 30 (Colo.1996). However, a provision may be void and unenforceable if it violates public policy by attempting to "dilute, condition, or limit statutorily mandated coverage." *See Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 100 (Colo.1995).

Here, the consent to sue clause does not dilute, condition, or limit statutorily mandated coverage, it merely reflects State Farm's unwillingness to be bound by a judgment it did not have a sufficient opportunity to contest. *See Aetna Casualty*, 906 P.2d at 100. Similarly, requiring arbitration after the insured obtains a default judgment does not clearly limit the insured's ability to receive full compensation for injuries sustained in an accident with an uninsured motorist. *See Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 63 (Colo.1990). Finally, the Petermans could have easily avoided a second proceeding by submitting their uninsured motorist claim to arbitration pursuant to the clear and unambiguous terms of the State Farm policy. *See Mountain Plains Constructors, Inc. v. Torrez*, 785 P.2d 928, 930 (Colo.1990) (explaining that "[s]ubmission of the dispute to arbitration is a condition precedent to the commencement of a suit on an issue covered by an arbitration agreement"). Instead, the Petermans chose to ignore the arbitration clause, filed suit against the uninsured motorist without naming State Farm as a party, and sent State

Farm vague correspondence indicating that they *might* file an uninsured motorist claim in the future. Under these circumstances, public policy does not support invalidating the consent to sue clause. *See Wales v. State Farm Mut. Auto. Ins. Co.*, 38 Colo.App. 360, 364, 559 P.2d 255, 258 (1976); *see also Victor v. State Farm Fire & Cas. Co.*, 795 F.Supp. 300, 302 (D.Alaska 1992) (requiring arbitration even though the insured obtained a default judgment against an uninsured motorist because of the Alaska's "strong public policy" in favor of arbitration).

After striking down the consent to sue clause, the majority holds that even though the arbitration clause in the State Farm policy is enforceable, State Farm waived its right to arbitrate by not intervening in the litigation between the Petermans and the uninsured motorist. I disagree with this conclusion as well.

A waiver is an intentional relinquishment of a known right or privilege. *See Duran v. Housing Auth. of City & County of Denver*, 761 P.2d 180, 183 (Colo.1988); *Department of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984). A waiver can be shown by unequivocal conduct or statements showing an intent to relinquish known rights. *See Jelen & Son, Inc. v. Bandimere*, 801 P.2d 1182, 1185 (Colo.1990). Although an intention to waive a benefit may be implied by conduct, the conduct itself should be free from ambiguity and clearly manifest the intention not to assert the benefit. *See Duran*, 761 P.2d at 183.

In my view, State Farm did not waive its right to arbitrate. By filing suit against the uninsured motorist without designating State Farm as a party, the Petermans did nothing to trigger State Farm's contractual duty to pay uninsured motorist benefits. Similarly, the Petermans' did not make an explicit demand for uninsured motorist coverage until

**4.** This case is distinguishable from *Briggs* in several respects. First, the insurance contract at issue in *Briggs* did not involve a mandatory arbitration clause as is the case here. Rather, the policy in *Briggs* permitted the insured to file lawsuits against both the uninsured motorist and the insurance company simultaneously. *Briggs* therefore concerned whether the insurer could enforce the consent to sue clause to require a second *judicial* proceeding after the entry of default against the uninsured motorist. Additional-

ly, in *Briggs* there was no question that the defendant was uninsured and that a claim was being asserted pursuant to the terms of the insurance policy, whereas here the Petermans' correspondence indicates that the status of the uninsured motorist was unclear and no claim was filed until after the default judgment was obtained. While the insurance company in *Briggs* was clearly on notice that its insured was asserting a claim under the policy, the issue of notice is far more questionable here.

*after* the default judgment was entered.[5] Therefore, State Farm was under no obligation to intervene in the litigation between the Petermans and the uninsured motorist. *See* C.R.C.P. 24. In fact, State Farm was prohibited from participating in this litigation by the clear and unambiguous terms of the policy, which requires arbitration of all uninsured motorist claims. Once State Farm was aware of the Petermans' uninsured motorist claim, it moved to compel arbitration. Under these facts, no waiver took place.

### III.

By invalidating the consent to sue clause and holding that State Farm was obligated to intervene in litigation involving the Petermans and the uninsured motorist, the majority holds that State Farm, without proper notice or any level of participation, is bound by a large default judgment in a case involving apparently minor injuries. Besides the obvious due process implications raised by such a result, the majority has rewritten a simple and cost-effective arbitration procedure to authorize litigation as a condition precedent to arbitration. *See State Farm Mut. Auto. Ins. Co. v. Stein,* 940 P.2d 384, 387 (Colo.1997) (explaining that "[w]hen a contractual provision is clear and unambiguous, courts should neither rewrite it nor limit its effect by a strained construction"). Such a procedure does violence to the terms of the contract and weakens the effectiveness of arbitration as an alternative to litigation. Accordingly, I dissent.

I am authorized to say that Justice SCOTT joins in this dissent.

---

**5.** The majority asserts that "the district court ... concluded that State Farm had notice that the defendants in the underlying action were uninsured" and that we are bound by this factual determination. *See* maj. op. at 490 n.2. However, the district court only determined that State Farm was provided with *"adequate* notice of their *potential* liability and *could* have sought intervention." (Emphasis added.) The issue therefore was not whether State Farm had notice that the uninsured motorist was uninsured, but whether it had *sufficient* notice to compel its intervention into the judicial proceedings. Contrary to the majority, I do not view this question as one of fact to which we are bound. Furthermore, although the majority relies upon statements made to the Petermans' counsel in affidavits to establish State Farm's notice, these statements are inadmissible because they are clearly self-serving. *See Stone v. Union Fire Ins. Co.,* 106 Colo. 522, 529, 107 P.2d 241, 244 (1940).